# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

BRANCH v BUCKLEY AND OTHERS.

June 10, 1909.

Absent, Keith, P.

1. EQUITY PLEADING—*Amendments.*—The question of amending pleadings in chancery is largely in the discretion of the trial court. In the case in judgment there is nothing in the character of the amendments, nor the circumstances under which they were made, that shows that the discretion of the trial court was improperly exercised.

2. EQUITY PLEADING—*Allegations of Actual Fraud—Constructive Fraud.* —Although a bill alleges actual fraud and contains a special prayer for relief on that ground if the facts alleged also make out a case of constructive fraud and these facts are established, relief may be afforded on the latter ground.

3. FRAUD—*Fiduciary Relations — Advantage — Influence.*— Wherever a fiduciary relation exists as a fact between persons, and confidence is reposed on the one side, and there is a resulting superiority and influence on the other, and the inferior is induced by the superior to transfer to the latter valuable property without consideration, or upon an inadequate consideration, such transfer will be set aside by a court of equity. Such a transaction will not be sustained unless the trust relation was for the time being completely suspended, and the inferior acted throughout upon independent advice. and upon the fullest information and knowledge.

4. FRAUD—*Ratification.*—When the original transaction is infected with fraud, the confirmation of it is so inconsistent with justice, and so likely to be accompanied by imposition that courts watch it with the utmost strictness, and do not allow it to stand but upon the clearest evidence.

5. FRAUDULENT CONVEYANCE—*Ratification—Receipt of Money—Knowledge of Fraud.*—The receipt of money under a contract voidable for fraud will not be deemed a ratification by the defrauded

party, when it does not appear that he had become, or ought to have become, fully aware of the imperfections of the transaction and of his right to impeach it, and that in receiving the payment he acted deliberately, and with the intention of ratifying or confirming it. In the absence of facts or circumstances showing this, no act of confirmation, however formal, would be effectual.

6. FRAUD—*Suit to Avoid—Promptness—Acquiescence.*—A party having the right to impeach a transaction for fraud, must do so in a reasonable time, but what is a reasonable time must be determined by the facts and circumstances of the particular case. To fix acquiescence on a party it should unequivocally appear that he knew the fact upon which the supposed acquiescence is founded and to which it refers.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion state the case.

*Bev. T. Crump* and *A. W. Patterson,* for the appellant.

*McGuire, Riely & Bryan,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The record in this appeal is large and the briefs very long, but the principles of law involved are few and pretty well settled.

While the bill and amended bills made a case of actual fraud, and contained a special prayer for relief on that ground, the facts alleged, in the opinion of the trial court, also made out a case of constructive fraud which entitled the complainants to the relief granted on that ground. Without deciding whether or not a case of actual fraud was proved, the trial court held that the case of constructive fraud was sustained by the proof, and set aside the conveyances and power of attorney

whose validity was attacked by the complainants' pleadings, and remitted the parties in interest to their rights as they were prior to the execution of the papers which were held to be invalid. From that decree this appeal was taken.

The action of the court in permitting the amended and second amended bills to be filed is assigned as error.

As has been often held by this court, the question of amending pleadings in chancery is largely in the discretion of the trial court. There is nothing in the character of the amendments made in this case, nor in the circumstances under which they were made, that shows that the discretion of the trial court was improperly exercised. See *Kelly* v. *Gwatkin,* 108 Va. 6, 2 Va. App. 19, 60 S. E. 749; *Tidball* v. *Bank,* 100 Va. 741, 42 S. E. 867; *Glenn* v. *Brown,* 99 Va. 322, 38 S. E. 189; *Alsop, Mosby & Co.* v. *Catlett,* 97 Va. 364, 34 S. E. 48.

Another error assigned is that the matters decided by the trial court were not put in issue, prayed for in the complainants' pleading, or established by the testimony.

It appears from the allegations of the complainants' pleadings that at the time of the transactions sought to be set aside as fraudulent, Miss Bulkley, the complainant, was over seventy-eight years of age, and a resident of Southport, Connecticut, but was then on a visit in Richmond, Virginia, at No. 109 East Franklin Street, the home of William R. Branch, her nephew, the appellant. It further appears that she had come to Richmond a few days before and very soon after the death of her sister, Mrs. Currant, who owned the house in which the appellant resided, and with whom he lived at the time of her death. Upon this house the complainant had a lien for money loaned her sister in the year 1870, amounting, principal and interest, to about $14,500, created by deed of trust; that Mrs. Currant had left a will in which it was provided among other things that the appellant, who was her executor, should sell the said house and lot, pay in full the debt due the complainant and secured thereon out of the proceeds of sale, turn the resi-

due thereof into the general estate of the testatrix of which the appellant and the complainant were the legatees, after the payment of testatrix's debts and the other legacies and gifts provided for by her will; that on the night of the 27th of November, 1903, the appellant came home accompanied by Norvelle L. Henley, an attorney from Williamsburg, where the appellant carried on business; that the complainant was given to understand that the presence of the attorney was to prepare papers carrying into effect an arrangement talked of by her and the appellant by which the appellant as executor and trustee, was to convey to her the house and lot upon which the debt was secured being about equal in value to her debt, instead of selling it and satisfying her debt, and she was to lease the property to the appellant for $500 per year, payable quarterly, the lessee to pay the taxes and keep the property in repair; that she did execute certain papers which she thought, and which she was given to understand by the appellant, were to carry their agreement into effect; that a short time afterwards she returned to her home in Connecticut; that in December, 1905, she was informed that the transaction which she had entered into and the papers which she had signed on the night of the 27th of November, 1903, were not such as she thought they were, but she was not convinced of this until she came to Richmond several weeks afterwards and made an examination of the records in the clerk's office of the chancery court of that city, where she found on record a deed from the appellant as substituted trustee and executor of Mrs. Currant conveying to the complainant the said house and lot, dated November 27, 1903, for the consideration of $14,510, a deed from herself to the appellant dated November 27, 1903, conveying to the appellant the said house and lot for the consideration of $5.00 and love and affection; a power of attorney from her to Norvelle L. Henley, dated November 27, 1903, authorizing him to release the said deed of trust on the Franklin street house and lot; and a deed of trust from the appellant

and wife .to Norvelle L. Henley, trustee, dated November 28, 1903, which conveys to the said trustee the Franklin street property to secure to the complainant the payment of $125 every three months during her life; that all of these papers were recorded on the same day—the 28th of November, 1903—and were delivered to the appellant on the 3rd of the following December by the clerk; .that none of these papers were ever in the possession of the complainant, except the deed of trust to Norvelle L. Henley, trustee; that while that paper was delivered to her by appellant she had never examined it, having implicit confidence in the appellant, until in December, 1905, when she was informed that the transactions of the night of November 27, 1903, were not what she thought they were.

· After making other allegations as to the conduct of the appellant, showing if true fraud in fact, she charges in her pleadings that the said deed conveying the Franklin street house and lot to the appellant and all the transactions based thereon, were fraudulent.

Copies of the deed of trust securing the complainant's debt on the Franklin street house and lot, of the will of Mrs. Currant, of the conveyance of the appellant as substituted trustee and executor, conveying the same property to the complainant; of the power of attorney authorizing the trust to be released, of the conveyance of the complainant to the appellant of the trust subject, and of the deed of trust executed by the appellant and his wife to secure the payment of the $125 every three months to the complainant during her life, are filed as exhibits in the cause.

The fiduciary relation existing between the appellant and complainant at the time the papers whose validity is assailed were executed, as charged in the complainant's pleadings, clearly appears from the record. Under 'well established principles of equity, independent of the question of actual fraud, transactions between parties occupying the relation to each other which existed between the appellant and complain-

ant at the time the former acquired title to the trust subject are at least *prima facie* fraudulent.

Perhaps the doctrine in this class of cases is as clearly stated by Mr. Pomeroy as can be found in either text-writers or decisions. In section 956 of his work on Equity Jurisprudence, he says: "The doctrine to be examined arises from the very conception and existence of a fiduciary relation. While equity does not deny the possibility of valid transactions between the two parties, yet because every fiduciary relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and of thereby overcoming the presumption. One principle underlies the whole subject of its application, and this principle may be stated in a negative and in an affirmative form. Its negative aspect cannot be better expressed than in the following language of a most able judge: 'The broad principle upon which the court acts in cases of this description is that wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in whom confidence or trust is imposed to exert influence over the person trusting him, the court will not allow the transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so entrusting him.' The principle was affirmatively stated with equal accuracy in the same case on appeal, as follows: 'The jurisdiction exercised by courts of equity over the dealings of persons standing in certain fiduciary relations has always been regarded as one of a most salutary description. The principles applicable to the more familiar relations of this character have been settled by many well known decisions, but the courts have always been careful not to fetter this useful

jurisdiction by defining the exact limits of its existence. Wherever two persons stand in such relation that while it continues confidence is necessarily reposed by one and the influence which naturally grows out of that confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached if no such confidential relation had existed.'* * * * It is settled by an overwhelming weight of authority, that the principle extends to every possible case in which a fiduciary relation exists *as a fact,* in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic or merely personal."

In section 957 he says: "There are two classes of cases to be considered which are somewhat different in their external forms, and are governed by different special rules, and which still depend upon the same general principle. The first class includes all those instances in which the two parties consciously and intentionally deal and negotiate with each other, each knowingly taking a part in the transaction, and there results from their dealing same conveyance, or contract, or gift. To such cases the principle literally and directly applies. The transaction is not necessarily voidable, it may be valid; but a presumption of its invalidity arises, which can only be overcome, if at all, by clear evidence of good faith, of full knowledge, and of independent consent and action. The second class includes all those instances in which one party purporting to act in his fiduciary character, deals with himself in his private and personal character, without the knowledge of his beneficiary, as where a trustee or agent to sell sells the property to himself. Such transactions are voidable at the suit of the beneficiary, and not merely presumptively or *prima facie* invalid. Nevertheless this particular rule is only a necessary

application of the single general principle. The circumstances show that there could not possibly be the good faith, knowledge and free consent required by the principle, and therefore the result, which is a refutable presumption in the first class of transactions, becomes a conclusive presumption in the second class."

The rule governing the second class of cases was applied in *Harrison, &c.* v. *Manson,* 95 Va. 598, 29 S. E. 420, and *Smith, &c.* v. *Miller,* 98 Va. 535, 37 S. E. 10, where it was held that a trustee cannot purchase directly or indirectly at his own sale, and that the validity of such a sale does not depend upon its fairness, but the sale is voidable, and when attacked must be set aside, although the price was fair or the best to be had or the motive pure.

The most favorable light to the appellant in which this case can be considered is that it belongs to the first class described by Mr. Pomeroy. In reference to that class he says, in section 958: "A purchase by a trustee from his *cestui que trust,* even for a fair price and without any undue advantage, or any other transaction between them by which the trustee obtains a benefit is generally voidable and will be set aside on behalf of the beneficiary; it is at least *prima facie* voidable upon the mere facts thus stated. There is, however, no imperative rule of equity that a transaction between the parties is necessarily, in every instance, voidable. It is possible for the trustee to overcome the presumption of invalidity. If the trustee can show by unimpeachable and convincing evidence that the beneficiary being *sui juris* had full information and complete understanding of all the facts concerning the property and the transaction itself, and the person with whom he was dealing, and gave a perfectly free consent, and that the price paid was fair and adequate, and that he made to the beneficiary a perfectly honest and complete disclosure of all the knowledge or information concerning the property possessed by himself, or which he might, with reasonable diligence, have possessed, and

that he has obtained no undue or inequitable advantage, and especially if it appears that the beneficiary acted in the transaction upon the independent information and advice of some intelligent third person, competent to give such advice, then the transaction will be sustained by a court of equity. The doctrine is enforced with the utmost stringency when the transaction is in the nature of a bounty conferred upon the trustee—a gift, or benefit without full consideration. Such a transaction will not be sustained, unless the trust relation was for the time being completely suspended, and the beneficiary acted throughout upon independent advice, and upon the fullest information and knowledge." See in addition to the numerous cases cited in the notes to that section of Pomeroy the following authorities: *Michoud* v. *Girod*, 4 How. (U. S.) 556, 11 L. Ed. 1076; *Bresee* v. *Bradford*, 99 Va. 331, 38 S. E. 196; Perry on Trusts, sections 194, 195; Lewin on Trusts, p. 467; notes to *Fox* v. *Mackreth*, 1 White & Tudor's Lead. Cas. in Eq., Pt. 1, 188.

Applying these principles of law to the case made by the pleadings and proof, it clearly appears that the appellant was guilty of constructive fraud in the transaction sought to be set aside.

The material facts of the case in this aspect of it are succinctly stated by the learned judge of the chancery court in his opinion filed in the case, and the statement is fully sustained by the record: He says: "William R. Branch was the trustee for his aunt, Miss Bulkley, under the will of Mrs. Currant, her sister, who had recently died. By the terms of the will he was required to sell the property now in dispute and from the proceeds to pay to Miss Bulkley the amount due to her under the Sherwood deed of trust of 1870, which rested upon the very property in question. After the payment of this amount to Miss Bulkley, and also after the payment of certain legacies, Miss Bulkley and Branch were made the residuary legatees. While the completion of the transaction covered

parts of two days, yet it was all one transaction.  Branch obtained the property by giving to Miss Bulkley a deed from himself as executor of Mrs. Currant and taking back from her a deed to himself for the property.  The consideration that he paid or agreed to pay to Miss Bulkley was inconsiderable and wholly inadequate; but whether the transaction be regarded as based on a valuable consideration alone, or as a bounty, or as partly based on each, it is equally vulnerable, even if Miss Bulkley did have knowledge of what she was doing.  Branch apparently regarded the transaction as a sale for valuable consideration, because he charged his full commissions on the sale, one-half of which he charged against Miss Bulkley as a residuary legatee.  She was a very old woman at the time, and had no adviser whatever.  She was a resident of a distant State and was here at the time, a visitor in Branch's house, and very much under his influence.  She had great confidence in him.  The papers, after being drawn by Branch's attorney, were not presented to her to read at her leisure, so as to give her, in any event, full opportunity to consider the nature and propriety of the transaction, but were immediately signed by her at Branch's request.  The transaction was a very hasty one.  There is doubt as to the soundness of Miss Bulkley's physical condition at the time; her signature, usually very clear and steady, was on this occasion very tremulous and uneven.  She executed and delivered to Branch on the evening of November 27, 1903, a deed and power of attorney, which on their face turned over to him a very large amount of her property, and the deed of trust by which she was to be secured a certain small life-annuity was not prepared until the next day, and the draft of it was never submitted to her.  She appears to have been ready to execute without question any papers that Branch desired."

But it is insisted by the appellant, that even if the transaction was voidable at the time it was entered into, the complainant has no right to have it avoided because of her delay in

instituting her suit, and acquiesence in, if not actual confirmation of, the transaction.

When the original transaction is infected with fraud, the confirmation of it, as was said by this court in *Wilson* v. *Carpenter*, 91 Va. 183, 192, 21 S. E. 243, 50 Am. St. Rep. 824, is so inconsistent with justice and so likely to be accompanied by imposition, that courts watch it with the utmost strictness, and do not allow it to stand but upon the clearest evidence.

In the note to *Fox* v. *Mackreth*, 1 White & T. Lead. Cas. Pt. 1, p. 237, it is said, that "while a *cestui que trust* may confirm an invalid sale so that he cannot afterwards set it aside, yet in order to constitute a valid confirmation a person must be aware that the act he is doing will have the effect of confirming an impeachable transaction." Numerous cases are cited to sustain this statement. See *De Montmorency* v. *Devereux*, 7 C. & F. 188, and n. 1; *Cockerell* v. *Cholmely*, 1 Russ. & M. 418, 425; 1 Sugden on Vendors, p. 253.

The only evidence that tends to show an act of confirmation in this case is the reception of the rent or annuity of $500 in quarterly installments. On the checks given by the appellant to the complainant in making these payments, and upon the receipts he prepared for her to sign, were written in very small letters some explanatory words, as "for payment due (date) on deed of trust on 109 E. Franklin street." There is nothing in the record to show that she read, or if she read, that she understood these explanatory words. She was entitled to the $500 in quarterly payments as rent for the house, as she understood the transaction, according to her contention, and may have received the money paid her with that understanding. But suppose she knew the nature of the transaction sought to be set aside when she received such payment, it does not appear that she had become, or ought to have become, fully aware of the imperfections of the transaction and of her own right to impeach it, and that in receiving the payment she acted deliberately and with the intention of ratifying or confirming it.

In the absence of facts or circumstances showing this, no act of confirmation however formal, would be effectual. See 2 Pom. Eq. Jur. sec. 964; note to *Fox* v. *Mackreth, supra,* p. 237.

Neither do we think that the complainant had lost her right to impeach the transaction by acquiescence or delay. While it is true that a party who has the right to impeach such a transaction must do so within a reasonable time, what is a reasonable time is to be determined by the particular facts and circumstances of each case. See 2 Pom. Eq. Jur. sec. 965; note to *Fox* v. *Mackreth, supra,* p. 236, and cases cited; *Newcombe* v. *Brooks,* 16 W. Va. 32 (Green, J.)

It is said in the note to *Fox* v. *Mackreth,* and is sustained by the cases cited, that "acquiescence for a .long time in an improper sale will disable a person from coming into court of equity to set it aside   *   *   *.   But to fix acquiescence upon a party it should unequivocally appear that he knew the fact upon which the supposed acquiescence is founded and to which it refers." And these statements are sustained by numerous cases cited, among them *Pendall* v. *Evington,* 10 Vesey, at p. 488; *Charles* v. *Trevelyan,* 11 C. & F. 714, 740; 1 Sugden on Vendors, p. 252-3, and cases in note 1.

Very soon after the transaction involved in this case was entered into, the complainant, who was quite an old woman, returned to her home in Connecticut. Conceding that she knew what the transaction was, it does not appear that she knew or ought to have known that it was of a character that she could impeach until shortly before she instituted her suit. The appellant is still in the possession of the property without any material change in it, and it does not appear that any prejudice has or will result to the appellant by reason of the complainant's conduct or delay in asserting her rights.

We are of opinion, therefore, that there is no error in the decree appealed from to the prejudice of the appellant, and that it should be affirmed.

*Affirmed.*