**GOLDMAN v. KAPLAN et al.**

No. 5801.

United States Court of Appeals
Fourth Circuit.

Nov. 8, 1948.

504

Eastwood D. Herbert, of Norfolk, Va., and Samuel H. Gellman, of Richmond, Va., for appellant.

Herman A. Sacks and James G. Martin, both of Norfolk, Va., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This case concerns the administration of a testamentary trust in which, as the District Judge found, the trustee made use of certain property committed to his care for his own benefit and to the detriment of the beneficiaries. The suit was brought and this appeal was taken by one of the beneficiaries who complains that the period for which the trustee was held liable to account to him for the use and occupancy of the property was unduly restricted in the judgment below. The appellant is a resident of North Carolina and the other beneficiaries, who are residents of Virginia, were unable to join as party plaintiffs since their joinder in a suit against the trustee, who is also a resident of Virginia, would have ousted the jurisdiction of the court.

Prior to 1926, Sol Kaplan and his father-in-law, Jacob Goldman, were engaged as partners in the wholesale leather business at Nos. 500–502 Church Street in Norfolk, Virginia. In that year Goldman died leaving a will under which his four children, one of whom is the plaintiff herein, acquired equal interests in the business, subject to the payment of certain bequests and also equal beneficial interests in certain real estate in Norfolk which he directed to be held in trust for their benefit for twenty-five years and then to be divided among them. Kaplan was named as executor and trustee under the will.

The business had been conducted in two of the most valuable buildings left in trust by the testator, and was continued at the same location by Kaplan and the children. In 1927 a corporation was formed to which the owners of the business transferred their respective interests, and Kaplan and his wife became the controlling shareholders. By agreement of all the interested parties, and without written lease, the rent of the property occupied by the corporation was fixed at $100 per month and it remained at this figure until December 31, 1939, although in 1937 or 1938 the corporation enlarged the space it occupied by moving into certain small adjoining properties which also belonged to the trust estate.

Louis H. Goldman, the plaintiff herein, continued as shareholder and director of the corporation, and was also an employee until 1938. In that year he moved to Durham, North Carolina, and has not since participated in the business of the corporation. In 1942 he and two of the other children sold their stock in the corporation to Mrs. Kaplan, and since that occurrence the Kaplans have been the sole stockholders.

On December 8, 1939, Kaplan notified the plaintiff that the rent for the property would be reduced to $75 per month because the property had depreciated in value. No written lease was executed. In September, 1941, Kaplan restored the rent to $100 per month and it remained at this figure until 1946. On March 29, 1946, an attorney wrote to Kaplan, as trustee, on behalf of the beneficiaries other than Mrs. Kaplan, and complained of the administration of the estate and the gross inadequacy of the rent paid by the corporation. In April, 1946, Kaplan raised the rent to $125 per month at which figure it has since remained.

The pending suit was brought on July 28, 1947. It sought the removal of the trustee, the vacation of the property by the corporation, a discovery of the books and records relating to the administration of the trust, a termination of the trust, and an accounting by the trustee. These claims have been reduced in this court to two, to which we confine our attention as follows: (1) A claim for the plaintiff's share of a deficiency in the rent paid for the premises occupied by the corporation from 1940 to date, to be fixed by the District Court and charged against the trustee; and (2) a claim for plaintiff's share of $450 alleged to be an overcharge by the trustee for the cost of stating an account of the administration of the trust demanded by the plaintiff's attorney.

The District Judge reached the conclusion, upon evidence produced by the parties, that the properties of the estate occupied by the corporation had a fair rental value of $350 per month, "certainly since March, 1946, and had such rental value at the time this action was tried;" but he also held that the plaintiff knew the rental paid by the corporation between 1940 and 1946 and accepted checks therefor, and did not give notice of or seriously press his claim that the trustee had collected an inadequate rent from the corporation until his attorney gave notice on March 29, 1946. There was evidence that the plaintiff wrote to the trustee on December 15, 1939, and vigorously complained of the inadequacy of the rent, but we understand the finding of the District Judge to be that no complaint was actually received by the trustee until 1946, and we accept this finding in reaching our decision.

Since the plaintiff made no complaint prior to March, 1946, the judge reached the conclusion that the increased rental should start "from a reasonable time after plaintiff's objection in March, 1946, to the arrangement theretofore existing, to wit, May 1, 1946," and he therefore allowed the plaintiff the sum of $1038.62 as the balance of his share of the increased rental through the month of March, 1948. The judge's reasons for this decision are stated as follows in his formal conclusions of law:

"The plaintiff by his failure to take affirmative action during the period from 1940 to 1946, led the executor to believe the rent was satisfactory and it would not be equitable for the plaintiff to claim additional rent before May 1, 1946, and the plaintiff waived his right to make such a claim. The plaintiff should not be allowed to assert a claim retrospectively, merely because he can now see that economic conditions were good, but he should have asserted his claim at a time when the defendant could have charged such additional rent in his expenses and been governed in his affairs accordingly, especially in his right to move and in reporting his income for taxes etc. To permit the plaintiff to remain quiet and then recover would allow him to gamble on the economic rise or fall in business."

The judge also found that the trustee loaned to the corporation various sums of money belonging to the estate from time to time, and the corporation advanced monies for the estate on occasion, all of which, according to a statement of account submitted by him to the plaintiff's counsel after frequent demands, were shown to have been subsequently repaid. The preparation of the account by the trustee was at the insistence of the plaintiff for a statement of the affairs of the estate, and the expense of preparing the statement, amounting to $450, was charged against the estate. The judge found that the estate had suffered no loss through these acts and omissions of the trustee, except as to the inadequacy of the rent, and did not require the trustee to account to the plaintiff for his share of the sum of $450.

The finding of fact that the amount of rent collected by the trustee from the corporation in March, 1946, and thereafter was inadequate, was abundantly supported by the evidence; but the conclusion of the court that the trustee was not chargeable with the inadequacy of the rent prior to that date because no complaint was made by the plaintiff, was based upon too lenient a view of the trustee's responsibilities. The fundamental duty of loyalty and good faith which a trustee owes to the beneficiaries of the trust, and the rigid stand-

ard of behavior required of him when he acts in his own interest in the performance of his duties, are recognized by all the text-writers and all the decisions of the courts, including those of Virginia by which we are bound in this case. Scott on Trusts, Vol. 2, §§ 170, 170.25; Swineford v. Virginia Trust Co., 154 Va. 751, 152 S.E. 350, 77 A.L.R. 1504; Branch v. Buckley, 109 Va. 784, 65 S.E. 652. Nowhere has the grave responsibility resting upon the trustee been stated with such eloquence and lofty purpose as in the words of Chief Judge Cardozo in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L. R. 1, where he said:

"Many 'forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honestly alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Wendt v. Fischer, 243 N.Y. 439, 444, 154 N.E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

■ In the pending case, however, the trustee relies upon decisions which, while not departing from the fundamental rule of strict responsibility, excuse a trustee from the consequences of an act done fairly and in good faith if it has been done with the consent of the beneficiary, who was sui juris, fully acquainted with the relevant facts and his legal rights, and was not improperly influenced by the trustee. Scott on Trusts, Vol. 2, § 216. That rule is likewise recognized in Virginia and is thus stated in Branch v. Buckley, 109 Va. 784, 791, 65 S.E. 652, 654, where the court quoted with approval the following passage from Pomeroy on Equity Jurisprudence, § 597:

" * * * If the trustee can show by unimpeachable and convincing evidence that the beneficiary being sui juris had full information and complete understanding of all the facts concerning the property and the transaction itself, and the person with whom he was dealing, and gave a perfectly free consent, and that the price paid was fair and adequate, and that he made to the beneficiary a perfectly honest and complete disclosure of all the knowledge or information concerning the property possessed by himself, or which he might, with reasonable diligence, have possessed, and that he has obtained no undue or inequitable advantage, and especially if it appears that the beneficiary acted in the transaction upon the independent information and advice of some intelligent third person, competent to give such advice, then the transaction will be sustained by a court of equity. The doctrine is enforced with the utmost stringency when the transaction is in the nature of a bounty conferred upon the trustee—a gift or benefit without full consideration. Such a transaction will not be sustained, unless the trust relation was for the time being completely suspended, and the beneficiary acted throughout upon independent advice, and upon the fullest information and knowledge."

■ It is quite clear, however, from the facts in this case pertaining to the respective situations of the trustee and the plaintiff beneficiary, that the trustee cannot claim the protection of this rule. Early in the relationship between the parties, when the plaintiff lived in Norfolk and was a shareholder and director of the corporation as well as one of its employees, the contention might fairly have been made that since he consented to the payment of a small rent with full knowledge of the circumstances, he had no reason to complain; but the relationship and pertinent circumstances were far different after 1938 when the plaintiff gave up his position and moved his residence to North Carolina, and especially after 1942 when he sold his interest in the corporation to the trustee's wife. During the first part of this period the trustee lowered the rent to $75 per month, and then restored it to $100 per month and continued to pay this sum thereafter until 1946, despite the great advance of the rental value of property and the business pros-

perity that came to Norfolk during the subsequent years of the World War. During all of these years from 1938 until 1946, the amount of the rent was known to the plaintiff but it was fixed without his agreement or consent, for it must be remembered that there was no written lease and that the sole responsibility was upon the trustee who was in effect both the landlord and the tenant of the premises to fix the rent at a fair and adequate sum. The evidence is not only lacking in proof of consent by the beneficiary, but fails to show that the trustee furnished any information to the plaintiff as to the increased value of the property of which the trustee was well aware, or that the plaintiff was sufficiently acquainted with real estate values in Norfolk to enable him to determine for himself the rental value of business premises.*

██ The whole defense of the trustee therefore rests upon the plaintiff's knowledge of the amount of the rental paid and his failure to object. The trustee nevertheless contends that he was discharged from obligation to the beneficiary to make good the deficiency in rent because the beneficiary was inactive and failed to complain prior to 1946, and hence must be held to have acquiesced in the trustee's conduct even though it amounted to a breach of trust. There are cases which hold that if a breach of trust has occurred which the beneficiary may either set aside or affirm, and the beneficiary by long inaction affirms the transaction, he cannot thereafter set it aside and hold the trustee liable for the breach. Hoyt v. Latham, 143 U.S. 553, 12 S.Ct. 568, 36 L.Ed. 259; Hammond v. Hopkins, 143 U.S. 224, 12 S.Ct. 418, 36 L.Ed.

134; Davis v. Davis Trust Co., 106 W.Va. 228, 145 S.E. 588. But this principle is subject to the limitation that the beneficiary is not barred if he is not in possession of all the relevant facts that the trustee knew or should have known, or is not aware of his legal rights. Scott on Trusts, Vol. 2, § 218. Obviously the burden of proof is on the trustee when the fairness of a transaction is challenged in which he makes use of the trust property for his own benefit; Sedgwick's Curator v. Taylor, 84 Va. 820, 824, 6 S.E. 226; and in this case that burden has not been met. The evidence does not show that the beneficiary delayed in order to take advantage of a possible rise in rental values. Indeed it does not appear that he had any chance of gain by delaying action. On the contrary, the surrounding circumstances strongly suggest that the trustee knowingly took advantage of his dual position for his own profit, hoping that his breach of trust would be overlooked by the interested parties.

The judge has determined that the rental paid in March, 1946, and subsequent years was grossly inadequate, and while he did not find it necessary to go back of that date, the evidence indicates that for a long time prior thereto the property was worth far more than the corporation paid, and that this fact was known to the trustee. The case must be therefore remanded to the District Court in order to ascertain the fair rental of the property for the period from 1940 to 1946, and to fix the share of the plaintiff in any shortage that may be found.

The judge has found that the plaintiff suffered no loss through other dealings of

---

* The strict accountability of a trustee is shown by the well established distinction which is drawn between the consent of a beneficiary and his failure to object to the wrongful action of a trustee. The mere fact that the beneficiary knows that the trustee is committing a breach of trust but fails to object is not sufficient to preclude him from holding the trustee liable for his improper conduct. This is particularly true when the trustee is dealing with the beneficiary on his own account. In Scott on Trusts, Vol. 2, § 216.3 it is said: "If the trustee is dealing with the beneficiary on his own account, the transaction can also be set aside if it is not a fair transaction. Thus where the trustee with the consent of the beneficiary sells trust property to himself individually, it is not enough that the beneficiary had full knowledge of all the facts and of his legal rights, and that his consent was not improperly induced by the trustee. It is essential also that the sale should be at a price which is fair and reasonable. The situation is different from that which arises where the beneficiary consents to a sale of trust property to a third person, where the mere fact that the property is sold at less than its fair value is not of itself a sufficient ground for setting aside the sale."

the trustee in connection with the trust estate, and we do not find sufficient evidence in the record in regard to the alleged overcharge of $450 for the cost of stating the account to justify a reexamination of that matter. The new trial may therefore be confined to the plaintiff's claim that the trustee failed to collect an adequate rent from the corporation prior to March, 1946.

Reversed and remanded.