# Richmond

JEROLINE ARCHER RAKES v. JAMES E. (BILL) FULCHER, ET AL.

March 9, 1970.

Record No. 7072.

Present, Snead, C.J., I'Anson, Carrico, Gordon, Harrison and Cochran, JJ.

R. *Reid Young, Jr. (George M. Warren, Jr.; Jackson L. Kiser; Warren & Bowie; Young, Kiser, Frith & Haskins*, on brief), for plaintiff in error.

*Frank O. Meade (Meade, Tate and Meade*, on brief), for defendant in error.

I'Anson, J., delivered the opinion of the court.

On January 26, 1967, plaintiff, Jeroline Archer Rakes, instituted this action against the defendants, James E. Fulcher and Blue Ridge Transfer Company, Inc. (Blue Ridge), to recover damages for bodily injuries which she allegedly sustained as a result of the negligent operation of a tractor-trailer owned by Blue Ridge and operated by Fulcher in the course of his employment. A jury returned a verdict in favor of the defendant Fulcher, and the trial judge entered judgment thereon for both Fulcher and Blue Ridge. Plaintiff is here on a writ of error to the judgment.

Plaintiff contends that the trial court erred (1) in holding that she had failed to show good cause for an order, under Rule 4:9, requiring defendants to produce certain designated documents; (2) in limiting plaintiff's right of cross-examination of defendants' witness Stout; and (3) in entering judgment in favor of both defendants when the jury's verdict found in favor of defendant Fulcher and was silent as to Blue Ridge.

Plaintiff's evidence shows that on April 13, 1965, she was driving an automobile east on U. S. Route 57, a four-lane highway divided by a grass median strip, in Henry County, Virginia. When she

attempted to pass the tractor-trailer driven by defendant Fulcher, which was traveling east in the outside lane, it swerved over into her lane of travel, causing her car to turn over in the median strip. As a result, plaintiff suffered serious permanent injuries.

Defendant Fulcher testified that he was traveling east in the outside lane when he glanced in his mirror and saw plaintiff's car go out of control; at that time she was behind a flatbed truck, which was behind him. Taylor Hairston, driver of the flatbed truck, and Stuart Stout, a passenger, testified that they saw the plaintiff's car go out of control as it was coming from behind their truck. The investigating officer stated that tire pressure marks from plaintiff's car started "just to the right of the center line" and indicated that plaintiff's vehicle had "veered sharply."

On September 23, 1967, plaintiff filed a motion, pursuant to Rule 4:9, requesting the court to enter an order requiring defendants, among other things, to produce all written statements of witnesses interviewed and all narratives and written reports of claims adjusters relative to their investigative activities and contacts with possible witnesses relating to the accident. The supporting affidavit stated that affiant believed that "immediately upon the occurrence of the accident or soon thereafter," the defendants, through their agents or agents of their insurance carrier, conducted an investigation of the facts and circumstances leading up to the accident; that the information requested was necessary and important to prove the negligence of Fulcher and it was not readily available to plaintiff. On the same day, the plaintiff filed interrogatories requesting the defendants to furnish her with the names and addresses of all persons known to them who had knowledge of the facts and circumstances surrounding the accident.

A counter affidavit of defendants' counsel stated that defendants had no knowledge of their alleged involvement in the accident until this action was filed; that no investigation had been made by them or the agents of their insurance carrier prior to notice of this action; and that the statements of witnesses taken thereafter were a part of his work product for use in preparation for trial.

The trial court denied plaintiff's motion to produce documents on the grounds that good cause had not been shown, but directed defendants to answer the interrogatories.

Thereafter plaintiff took discovery depositions of defendant Fulcher and John Lynn and Herald Dean, claims adjusters for Allstate

Insurance Company, defendants' insurer. Each adjuster was asked the contents of statements taken from witnesses they had interviewed. Defendants' attorney objected on the grounds that this was an attempt to circumvent the trial court's order denying production of the documents, and the examination along that line was discontinued.

Later plaintiff's attorney renewed his motion for production of the documents previously requested. His supplemental affidavit in support of the motion stated that adjuster Lynn had not said in his deposition that he had talked to one Clifford Stone, who had taken statements from witness Hairston on May 26, 1965, and from defendant Fulcher on August 10, 1965; and that the documents were needed to test the accuracy of Lynn's deposition.

Upon representation of defendants' counsel that plaintiff had been furnished the names and addresses of all persons who had knowledge of the facts and circumstances surrounding the accident, the trial court denied plaintiff's second motion for the production of documents previously requested.

Rule 4:9 was adopted by this court on November 29, 1966, to become effective February 1, 1967, and there are no Virginia cases interpreting it. See Craig, *New Virginia Rules for Deposition and Discovery*, 53 Va. L. Rev. 1818, 1835-39, for comments on the new procedure. The pertinent part of the rule is as follows:

"(a) Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 4:5(b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 4:1(b) and which are in his possession, custody, or control * * *."

Our rule is substantially the same as Rule 34 of the Federal Rules of Civil Procedure, Title 28 U.S.C.A., and both counsel urge us to consider the federal cases interpreting the rule.

One purpose of discovery procedures is to obtain evidence in the sole possession of one party and unobtainable by opposing counsel through independent means. But more than mere relevancy to the issue of the documents sought is necessary; the movant must show

good cause. *Guilford National Bank* v. *Southern Ry. Co.*, 297 F. 2d 921, 923-24 (4th Cir. 1962); 74 Harv. L. Rev. 940, 965-67 (1961). *Contra, DeBruce* v. *Pennsylvania R.R. Co.*, 6 F.R.D. 403 (E.D. Pa. 1947).

A review of the many cases interpreting Rule 34 shows that the federal courts are not in agreement on the meaning of "good cause" as used in the context of the rule. It has been said "that where special considerations applicable to a lawyer's work product are not present, a showing that the documents in question are or might lead to admissible evidence, and that they are not otherwise available to the moving party, is a sufficient showing of good cause. Some courts have gone beyond this, and seem to suggest that * * * good cause is established by showing simply that the papers sought are otherwise unavailable and are relevant to the subject matter of the action. Other cases, including all the decisions in point from courts of appeals, reject this, and require some special circumstances in addition to relevancy to establish good cause." Wright, Federal Courts, § 87, pp. 337-38 (1963).

█ The granting or denying of a request under Rule 34 is a matter within the trial court's discretion and will be reversed only if the action taken was improvident and affected substantial rights. *Guilford National Bank* v. *Southern Ry. Co.*, supra, 297 F.2d at 926; *Goosman* v. *A. Duie Pyle, Inc.*, 320 F.2d 45 (4th Cir. 1963). See also *Vaughn* v. *Chrysler Corp.*, 46 F.R.D. 6, 8 (W.D. Okla. 1968); *Alseike* v. *Miller*, 196 Kan. 547, 553-54, 412 P.2d 1007, 1014 (1966).

The mere assertion by affidavit that discovery is necessary for a movant to investigate fully and prepare his case is clearly insufficient as a statement of good cause. *Holt* v. *The James Sheridan*, 12 F.R.D. 72 (S.D. N.Y. 1951); *Aetna Life Ins. Co.* v. *Little Rock Basket Co.*, 14 F.R.D. 383 (E.D. Ark. 1953). Neither is good cause established when the moving party has not shown a bona fide effort to obtain the information by independent investigation. *Goldner* v. *Chicago & N.W. Ry. Sys.*, 13 F.R.D. 326 (N.D. Ill. 1952).

█ Within the scope of the good cause rule is the "work product" doctrine, which protects an attorney from opening his files for inspection by an opposing attorney. This doctrine, however, does not offer absolute immunity, and discovery will be permitted where a showing of necessity greater than the normal requirement for good cause is made. *Hickman* v. *Taylor*, 329 U.S. 495, 511-12, 67 S.Ct. 385, 394, 91 L.Ed. 451, 462-63 (1947). See also *Kearney &*

*Trecker Corp.* v. *Giddings & Lewis, Inc.*, 296 F. Supp. 979, 982 (E.D. Wis. 1969).

While there are cases holding to the contrary, *Alltmont* v. *United States*, 177 F.2d 971 (3rd Cir. 1950), has extended the work product doctrine to persons obtaining statements of witnesses for use of trial counsel. For a discussion of this question, see the advisory committee note, Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts Relating to Deposition and Discovery, pp. 22, 26 (November 1967).

■ Where both parties have an equal opportunity to investigate, and where all the witnesses to the accident are known and available to both sides, discovery should not be granted. *Koss* v. *American S.S. Co.*, 27 F.R.D. 511, 512 (E.D. Mich. 1960); *Herrick* v. *Barber S.S. Lines, Inc.*, 41 F.R.D. 51, 52 (S.D. N.Y. 1966); *Dean* v. *Superior Court*, 84 Ariz. 104, 113, 324 P.2d 764, 770, 73 A.L.R. 2d 1 (1958).

In the present case, the plaintiff offered no evidence to dispute the statements in the affidavit filed by defendants' counsel that the defendants, their agents, or the agents of their insurer did not interview or obtain statements from witnesses "immediately upon the occurrence of the accident or soon thereafter," and that no investigation was begun on behalf of defendants until after the present action was instituted.

Thus plaintiff's counsel had the opportunity to make an investigation and to interview the witnesses before defendants, their agents, or the agents of their insurer. The names and addresses of witnesses were available to counsel from the trooper who investigated the accident. Plaintiff also obtained the names and addresses of all witnesses known to defendants through interrogatories. The fact that plaintiff's counsel was employed only a short time before the action was brought and that plaintiff was unable to assist counsel in any way, because she was incapacitated, does not change the situation here.

We interpret good cause as used in our Rule 4:9 to mean that before any party is entitled to the production of documents or other tangible things, such as are involved in this case, there must be a showing of some special circumstances in addition to relevancy. Discovery procedures were not intended to open an attorney's files to opposing counsel; nor were they intended to afford an attorney the luxury of having opposing counsel investigate his case for him.

Hence we hold that good cause was not shown for the production of documents, and that the trial court properly denied plaintiff's first motion.

The second request of plaintiff's attorney for the production of documents was based upon his suspicion that Lynn, a claims adjuster for defendants' insurer, had made inconsistent and incomplete statements in his discovery deposition because he did not mention the fact that he had talked with Clifford Stone, a claims adjuster for plaintiff's insurer, who had taken statements from witness Hairston and defendant Fulcher.

The mere suspicion of counsel that Lynn had made inconsistent and incomplete statements is not a showing of good cause. *Rio Haven, Inc.* v. *National Screen Service Corp.*, 11 F.R.D. 509, 511 (E.D. Pa. 1951); *Cairns* v. *Chicago Express, Inc.*, 25 F.R.D. 169, 170 (N.D. Ohio 1960). Hence the trial court was correct in denying plaintiff's second motion.

Plaintiff contends that the trial court erred in refusing to permit her counsel to follow a particular form of questioning of the witness Stout, and thus she was denied her basic right of cross-examination.

The record shows that the questions counsel proposed to ask the witness were discussed in chambers. The questions were to begin as follows:

"Do you recall telling the * * *?
"Didn't you also tell me * * *?
"Didn't you tell me * * *?
"Why did you tell me * * *?"

In Virginia, "One of the most zealously guarded rights in the administration of justice is that of cross-examining an adversary's witnesses." *Moore* v. *Commonwealth*, 202 Va. 667, 669, 119 S.E.2d 324, 327 (1961). However this right, when it becomes a subject of abuse, shall be restricted. *Norfolk & Western Ry. Co.* v. *Eley*, 152 Va. 773, 778, 148 S.E. 678, 679 (1929).

To have permitted the questions in the proposed form, the court would have in effect been permitting counsel to testify against Stout without becoming a witness, and this could have resulted in giving the jury the impression that the facts assumed by the questions actually existed. Such a procedure would have amounted to an unwarranted and improper attempt to discredit the witness. *Wade*

v. *Peebles,* 162 Va. 479, 498, 174 S.E. 769, 776 (1934). Thus we hold that the trial court did not abuse its discretion in holding that the proposed cross-examination was improper.

█ Lastly, plaintiff contends that she was materially prejudiced by the judge's act of writing out and giving to the jury form verdicts which made no reference to defendant Blue Ridge and in entering judgment for Blue Ridge, since the jury's verdict was silent as to it.

It was not improper for the trial judge to give to the jury the form verdicts, one of which they could follow after they had reached their verdict.

The record shows that the trial judge inadvertently left out the name of Blue Ridge in the suggested forms of the verdict he submitted to the jury. Plaintiff's counsel did not question the jury's verdict until argument on his motion for a new trial.

In *Northern Va. Power Co.* v. *Bailey,* 194 Va. 464, 473, 73 S.E. 2d 425, 431 (1952), we said:

"If there is doubt as to the meaning of the jury's verdict the question should have been raised by counsel before the jury was discharged, thus permitting the verdict to be corrected."

Since the form of the verdict was not questioned until sometime after the jury was discharged, the plaintiff cannot now complain of the defect.

Where the liability of a defendant, if any, is predicated upon a master-servant relationship with a co-defendant whose negligence is alleged to have been the proximate cause of the injuries sustained by the plaintiff, a verdict in favor of the servant requires a verdict for the master also. *Barnes* v. *Ashworth,* 154 Va. 218, 230, 153 S.E. 711, 713-14 (1930); *Va. State Fair Ass'n.* v. *Burton,* 182 Va. 365, 368, 372, 28 S.E.2d 716, 717, 719 (1944).

The liability of Blue Ridge was predicated on the negligence of the servant Fulcher, and since the jury found for him the trial court did not err in entering judgment for both Fulcher and Blue Ridge under the circumstances here.

For the reasons stated, the judgment is

*Affirmed.*