## CIRCUIT COURT OF ALBEMARLE COUNTY

Janice Prince

v.

Ponderosa Steakhouse, Inc.

November 18, 1996

Case No. CL95-6427

BY JUDGE PAUL M. PEATROSS, JR.

This cause comes before the court on Defendant's Motion to Quash a subpoena *duces tecum* issued at the request of Plaintiff's counsel. The subpoena *duces tecum* seeks to discover any statements made by employees of the Defendant or its insurer, ITT Hartford, as well as any other documents in the possession of ITT pertaining to the underlying cause of action which were generated prior to Plaintiff's filing of a Motion for Judgment on October 25, 1996. Plaintiff argues that Defendant waived its right to object to the subpoena by failing to file a timely Motion to Quash. Defendant on its part contends that the documents sought were prepared in anticipation of litigation and thus constitute privileged work-product and are immune from disclosure.

### Statement of Facts

This recitation is taken from the pleadings, briefs of counsel, and depositions and is assumed true for purposes of ruling on this motion.

On May 15, 1994, Plaintiff Janice Prince was injured when a paper towel dispenser in the ladies' room at Defendant Ponderosa's restaurant in Albemarle County fell from the wall and hit her foot. Plaintiff reported her injury to Defendant's management and indicated the need to seek medical attention for her injury. Defendant's Assistant Manager, Tina Smith, filled out an accident report the same day.

On May 23, 1994, Defendant reported the accident to ITT. A representative of ITT then obtained a recorded statement from the Plaintiff.

On May 24, 1994, Plaintiff inquired of ITT as to the manner in which her medical bills should be submitted for payment.

On June 13, 1994, a representative of ITT obtained a recorded statement from Ms. Smith.

On September 6, 1994, Plaintiff retained counsel, who notified ITT by means of a letter of representation that they would be pursuing Plaintiff's claim of personal injuries against Defendant.

On October 25, 1995, Plaintiff filed a Motion for Judgment against Defendant seeking recovery for damages due to personal injury suffered on Defendant's premises.

On April 24, 1996, Plaintiff's counsel deposed Ms. Smith and Defendant's General Manager, Gerald Messer.

On May 7, 1996, Plaintiff requested the subpoena *duces tecum*. The subpoena was served on Defendant on May 21, 1996, and returned on May 28, 1996.

On June 4, 1996, Plaintiff filed a Motion requesting that ITT be required to show cause why it should not be held in contempt for failure to comply with the subpoena.

On June 6, 1996, Defendant filed a Motion to Quash the subpoena.

### Discussion of Law

#### The Waiver Issue

The procedure for compelling discovery is governed by Virginia Rule 4:9, which states that "any party may serve on any other party a request to produce and permit the party making the request . . . to inspect and copy, any designated documents . . . and other data compilations from which information can be obtained." Virginia Rule 4:9(a).

The Rule states further, in subsection (b), that "the party upon whom the request is served shall serve a written response within 21 days after the service of the request," but adds that "the court may allow a shorter or longer time."

Requests for the production of documents by persons not a party are controlled by subsection (c) of the Rule, which states that the court "upon written motion promptly made by the person so required to produce, or by the party against whom such production is sought, may quash or modify the subpoena if it is unreasonable or oppressive."

No claim based upon the "promptly made" language of Rule 4:9(c) has been decided by the Virginia Supreme Court. However, there are passages in two separate Virginia Supreme Court opinions which are informative. In *Branch v. Buckley*, 109 Va. 784 (1909), the Court declared that "what is a reasonable time is to be determined by the particular facts and circumstances of each case." *Id.* at 795. The Court has also held that "where there is no showing that granting the motion would unduly delay the trial or would otherwise impede justice, the motion is usually held to be timely." *Thomas v. Commonwealth*, 218 Va. 553, 555 (1977) (quoting from 47 Am. Jur. 2d, *Jury*, 70 at 687).

### The Work-Product Issue

The work-product doctrine has been codified in Virginia under Rule 4:1(b)(3), which mirrors Federal Rule of Civil Procedure 26(b)(3) and states in relevant part that:

> A party may obtain discovery of documents and tangible things otherwise discoverable . . . prepared in anticipation of litigation or for trial for another party or by or for that other party's representative (including his . . . insurer) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

While the Virginia Supreme Court has yet to determine whether witness statements and other documents generated by a defendant's insurer following an accident come within the ambit of Rule 4:1(b)(3), several cases concerning this question have arisen in the Circuit Courts. Seven courts have held that such documents are compiled in the normal course of business and so are not covered by the work-product privilege, two courts have extended Rule 4:1(b)(3) to cover such circumstances, and two courts have reached different outcomes in different cases.

As this court observed in *S. W. Heischman, Inc. v. Reliance Ins. Co.*, 30 Va. Cir. 235 (1993):

> The difficult issue in many work-product cases . . . is to determine when litigation was actually anticipated by the parties. Since the work-product doctrine is intended to grant an attorney the freedom to prepare a case without worrying about improper disclosure, there is no need to apply it where litigation is not yet

imminent. This question is particularly troublesome in the insurance context, where the nature of the business requires a routine investigation prior to the determination of any claim. *Id.* at 243.

The leading Virginia Supreme Court case on discovery, *Rakes v. Fulcher*, 210 Va. 542 (1970), contains several passages which bear on the case now before the court:

> One purpose of discovery procedures is to obtain evidence in the sole possession of one party and unobtainable by opposing counsel through independent means. But more than mere relevancy to the issue of the documents sought is necessary; the movant must show good cause . . . .
>
> Within the scope of the good cause rule is the work-product doctrine, which protects an attorney from opening his files for inspection by an opposing attorney. This doctrine, however, does not offer absolute immunity, and discovery will be permitted where a showing of necessity greater than the normal requirement for good cause is made . . . .
>
> We interpret good cause . . . to mean that before any party is entitled to the production of documents . . . there must be a showing of some special circumstances in addition to relevancy. Discovery procedures were not intended to open an attorney's files to opposing counsel; nor were they intended to afford an attorney the luxury of having opposing counsel investigate his case for him. *Id.* 545-547.

Because Virginia Rule 4:1(b)(3) is modeled after the Federal Rule, Federal court holdings on this issue can provide additional guidance in this unsettled territory. The Fourth Circuit, in *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980 (4th Cir. 1992), noted that:

> The mere fact that litigation does eventually ensue does not, by itself, cloak materials with work-product immunity . . . "the fact that a defendant anticipates the contingency of litigation resulting from an accident or an event does not automatically qualify an in-house report as work product." (Quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D. D.C. 1982)); *Murray* at 984.

The court in *Murray* went on to declare that:

> The document must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation . . . Following any . . . accident, it can be expected that designated personnel will conduct investigations, not only out of a concern for future litigation, but also to prevent reoccurrences [and] to improve safety . . . Determining the driving force behind the preparation of each requested document is therefore required in resolving a work-product immunity question. *Id.*

The law has recognized a clear distinction between documents prepared in anticipation of trial, which are privileged and therefore non-discoverable, and those assembled in the ordinary course of business, which are fully and fairly discoverable:

> The nature of the insurance business requires an investigation prior to the determination of the insured's claim. Most courts have held that statements taken by an insurance adjuster in the normal course of examining a claim are made during the regular course of the insurer's business, not in anticipation of a trial, and therefore are discoverable. *State Farm Fire & Cas. Co. v. Perrigan*, 102 F.R.D. 235, 237 (W.D. Va. 1984).

The *Perrigan* court recognized the fact that "at some point an insurance company shifts its activity from the ordinary course of business to anticipation of litigation, and no hard and fast rule governs when this change occurs." *Id.* at 238. Rather, the court held "this distinction lies at the pivotal point where the probability of litigating the claim is substantial and imminent." *Id.*

In a case very similar to the one currently before the court, *Blough v. Food Lion, Inc.*, 142 F.R.D. 622 (E.D. Va. 1992), a woman was injured when a can fell from a top shelf at a grocery store and struck her hand. The court in that case observed that "Food Lion created the accident report in this case on the day Blough was injured in the store. Food Lion did not at that time face an 'actual claim'." *Id.* at 624. The court then concluded that "Food Lion created the report in the regular course of business, not in anticipation of litigation. The accident report, therefore, does not qualify as work product and is discoverable." *Id.*

## Conclusion

### The Waiver Issue

Rule 4:9(c) stipulates no specific time frame within which a Motion to Quash a subpoena *duces tecum* must be filed but instead merely employs the general "promptly made" language. However, the Rule does suggest that twenty-one days is a reasonable amount of time to allow a party who is requested to produce documents under such a subpoena to respond.

In the present case, ITT received the subpoena on May 21, 1996, and was to produce the requested documents by May 28, 1996. On June 6, 1996, Defendant filed its Motion to Quash. Plaintiff contends that the failure of Defendant to file its Motion to Quash within the seven-day period between when its insurer received the subpoena and when it was to be returned was either careless or intentionally disobedient. Only sixteen days passed between ITT's receipt of the subpoena and the filing of Defendant's Motion to Quash. This does not appear to be beyond the reasonable meaning of the word "prompt."

Despite Plaintiff's argument to the contrary, neither common sense nor the language of the Rule led to the conclusion that Defendant failed to act promptly in light of "the particular facts and circumstances" of this case. Because there is no reason to believe that "granting the motion would unduly delay the trial or otherwise impede justice," Defendant's Motion to Quash the subpoena *duces tecum* is held to be timely, and the waiver argument advanced by Plaintiff is rejected.

### The Work-Product Issue

Defendant's argument that this court should adopt the rule apparently espoused by the Fairfax Circuit Court in *McCullough v. Standard Pressing Machines*, 39 Va. Cir. 191 (1996), and hold that because the ordinary course of business for insurers is to protect the insured against liability claims by third parties, all documents generated or gathered by liability insurers is prepared in anticipation of litigation and is therefore privileged work-product and exempt from discovery is rejected. Such a blanket presumption is unwarranted and overinclusive.

The question of whether documents prepared or collected by an insurance company following an accident should be deemed work-product must be decided on a case-by-case basis. Such a determination should only be made when the circumstances surrounding the claim and/or the nature

or severity of the accident itself make it clear that litigation is likely to result.

The relatively minor nature of the injury in this case was not enough, in itself, to lead Defendant to reasonably anticipate that it would be sued. Additionally, the character of the accident report prepared by Ms. Smith is such that it must be deemed to have been prepared in the ordinary course of business and not in anticipation of any "substantial and imminent" threat of litigation. Defendant is therefore ordered to deliver the accident report to Plaintiff.

Although Plaintiff did inquire about payment of her medical bills on May 24, 1994, this inquiry was not a warning of impending litigation but merely the notice of a claim against one of the insurer's clients. Insurance companies regularly and routinely handle such claims as part of their everyday business affairs. Therefore, Defendant could not reasonably have been anticipating future legal action at this point.

With regard to the statements made by Defendant's employees which were requested in the subpoena, Plaintiff was able to and did in fact depose said employees and therefore was not "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Typically, such statements are only discoverable when made by witnesses to an event where the passage of a substantial period of time between the occurrence of the event and the plaintiff's opportunity to depose them may lead to an erosion of the fullness and accuracy of their testimony. This does not appear to be an issue of concern in this case. However, because those statements taken prior to the point at which the likelihood that litigation would ensue became "substantial and imminent" do not qualify as work-product, they are discoverable.

Plaintiff has requested that all documents generated or gathered by Defendant's insurer prior to the filing of her Motion for Judgment on October 25, 1995, be made available for review. However, the letter of representation which Plaintiff's counsel sent to ITT on September 6, 1994, was clearly of a sufficient character to put Defendant on notice that litigation or the threat of it would almost certainly follow. Therefore, Defendant's Motion to Quash the subpoena *duces tecum* filed by Plaintiff is denied with regard to all documents that were in the possession of its insurance company on September 6, 1994, and granted with regard to all documents which it created or obtained after that date. Information collected subsequent to the cut-off date will only be made available to Plaintiff if and

when "a showing of necessity greater than the normal requirement for good cause is made."

In summary, Defendant's insurance company is hereby ordered to produce any and all written, transcribed, and/or reproduced statements made to any representative of the ITT Hartford Insurance Company prior to September 6, 1994, by any employee of Ponderosa Steakhouse, Inc., regarding the incident leading to the injury of Janice Prince on May 15, 1994, at the Ponderosa Steakhouse, Pantops Drive, Charlottesville, Virginia, and any and all records, documents, and things, omitting nothing, generated prior to September 6, 1994, which are in its possession, custody, or control pertaining to said incident.