# CIRCUIT COURT OF THE CITY OF NORFOLK

Joan C. McDonald

v.

Sentara Medical Group,
t/a Sentara Leigh Hospital

Case No. (Law) L03-939

January 5, 2004

BY JUDGE CHARLES D. GRIFFITH, JR.

## *Order*

Plaintiffs move for entry of an Order to overrule the objections of Defendant, Sentara Medical Group, to Plaintiff's Interrogatories and Request for Production of Documents and to compel the defendant to file appropriate responses. On October 10, 2003, the Court entertained plaintiff's motion. Plaintiff's motion was directed to Interrogatories 5, 6, 7, 9, 10, 11, 16, 17, 19, and 23. After consideration of the matter including points and authorities provided by counsel, the Court makes the following rulings.

Interrogatory 5: Identify whether or not you believe the area including the yard containing the helipad and concrete drainage way was completely safe for pedestrians on the evening of November 2, 2001, including what improvements might have made the area safer for hospital visitors, patients, and employees.

Answer: Objection, this interrogatory seeks information that, in the context of this litigation, would constitute a legal conclusion which I am not capable of providing or seeks the mental impressions of counsel which is not discoverable.

Defendant's objection is sustained.

6. Identify the name, address, phone number, and any other contact information possessed for any person or persons Sentara Leigh, its attorneys, investigators, agents, servants, employees, predecessors, successors, or assigns has knowledge of that has ever tripped, fallen, or has in any way been injured on the ground around the hospital, including the yard complained of in the Motion for Judgment located near the emergency room entrance between the emergency room parking lot and the emergency room driveway and including the yard hosting the helipad for the hospital and the concrete drainage area.

Answer: Objection, not relevant or likely to lead to the discovery of admissible evidence at trial; without waiving objection, the defendant had received no notice of any prior fall in the location where plaintiff fell.

Sustained except defendants must provide any information regarding notice of prior accidents only in the specific area of plaintiff's fall on the hospital grounds.

7. Please identify by name, address, and telephone number each and every person or entity that has ever made a claim for damages based on premises liability against Sentara Leigh Hospital within the past ten years and the final or current disposition of any such claim.

Answer: Objection, irrelevant and not reasonably calculated to lead to discovery of admissible evidence at trial.

Sustained; this request is overbroad and unduly burdensome, and there is no relevance to the specific incident alleged in this case.

9. Provide the name, address, phone number, and other contact information of all persons or entities who have performed or designed any part of the construction of the drainage way and concrete protrusion in question and who installed the fence now in place around the drainage way and helipad. For each entity or person identified, specify what work was performed by that person or entity and the date such work was performed, and provide all paperwork for the design and performance of any and all parts of such construction conducted at any time for both the fence and drainage way including original and subsequent agreements, blueprints, and changes thereto.

Answer: Unknown as to when drainage way and concrete was constructed; the fence was installed by Techcon, Inc., 850 Tidewater Drive, Norfolk, Va. 23504. The fence was installed sometime in October 2002. Attached is July 19, 2002, letter from Scott Smith, vice president of Techcon, Inc., to Sentara Leigh Hospital concerning the installation of the fence.

Defendant will attempt further reasonable inquiry to determine when additional drainage lane/barrier was constructed and by whom.

10. State whether there exists photographs, videotapes, or surveillance tapes with respect to the scene of the occurrence mentioned in plaintiff's petition taken within one year prior or subsequent to the incident mentioned in plaintiff's petition, and of the incident itself. If so, state the following:
    (a) Describe each photograph, video, or surveillance tape;
    (b) State the date each was taken;
    (c) State the name and address of the person taking each such photo, video, or surveillance tape;
    (d) State the name and address, employer, insurer, and job title of the person presently having control or custody of each photograph, video, or surveillance tape; and
    (e) Provide any such photograph, video, or surveillance tape. For the surveillance tape of the area, provide only the week prior to and including the incident referred to in the Motion for Judgment.

Answer: Objection to any photographs, video tapes, or surveillance tapes that were obtained in anticipation of litigation and/or in consultation with counsel other than photographs produced.

(a) Two photographs of the drainage area. Seven photographs of the accident scene;

(b) November 2, 2001; December 20, 2001;

(c) Norman Smith, Security Officer, Sentara Leigh Hospital; Gerald Anderson, CAC Med-Mal, Inc.;

(d) Cathy I. Lahouchuc, Risk Manager, Sentara Leigh Hospital;.

(e) Attached are copies of the photographs identified above.

Sustained subject to Defendants' agreeing to produce, if there exists, any additional photographs or video tapes of the area where plaintiff's fall occurred taken on or about the time frame of the fall.

11. State whether defendant or defendant's representatives was/were cited for any violation of a law or ordinance arising out of a defective condition of the hospital property within 1 (one) year before and after the occurrence in question, and, if so, state the charges for which the citation(s) were issued, the name and address of the court which issued same, the date of final disposition, and the case number for each such plea or conviction.

Answer: Objection, and overly broad as stated. There have been no citations concerning the helipad.

Plaintiff withdrew motion as to Interrogatory 11.

16. Identify each and every rule, statute, regulation, law, by-law, and document of any hospital, association, licensing authority, accrediting authority, court, government agency, or other private body which you, or your attorneys, may rely upon at trial in defense of the allegations contained in the Complaint.

Answer: objection, work product. Without waiving objection, none known at this time. .

Sustained for the reasons stated by defendant.

34

17. Describe in detail each and every act Plaintiff could have taken in your opinion to have avoided the fall and injuries on the premises on the date of the incident.

Answer: Objection, this interrogatory requests information that would constitute a legal conclusion which I am not capable of providing or seeks the mental impressions of counsel which is objected to as work product.

Sustained for the reasons stated by defendant.

19. Describe the lighting of the area in question at the time the Plaintiff was injured and state in your opinion why that lighting was or was not sufficient for safely walking through that area.

Answer: Street lights. Helipad lights come on when a helicopter is approaching. The additional information requested seeks a legal conclusion for which I am not capable of providing or asks for the mental impressions of counsel which is objected to as work product.

Sustained for the reasons stated by defendant.

23. Identify any statements, incidents, information, and/or documents known to you and requested by any of the foregoing interrogatories which you claim to be work product or subject to any common law or statutory privilege, including settlement agreements, and with respect to each interrogatory, specify the legal basis for the claim.

Answer: Claims history requested in Interrogatory No. 7 for reason stated in the answer.

Sustained for the reasons in the course preceding ruling on the individual interrogatories. It is so ordered.

March 4, 2004

BY JUDGE JOHN C. MORRISON, JR.

On November 2, 2001, Joan C. McDonald, the plaintiff, tripped and fell on the grounds of Sentara Leigh Hospital (Sentara), and she sustained serious

injury to her arm. Immediately after the accident, Norman Smith, a hospital security officer, spoke with McDonald and her husband, took pictures of the area, and prepared a report. Sentara received notice of a claim for damages from McDonald in December 2001. In addition to the materials created by Smith, there is a file in the custody of F. Jay Sweeny, operations manager for a company, hired by Sentara, called CAC-MedMal, Inc. (CAC). CAC, according to Sentara, is the administrator for claims made against Sentara, whose responsibilities include investigating and direct legal supervision of claims against Sentara. (Sentara's Memo. p. 2.) However, at least in the present case, CAC was involved prior to the filing or notice of any claim by McDonald.

McDonald issued a subpoena duces tecum requesting the contents of CAC's investigative file. Sentara submits to the Court that the only documents contained in CAC's file dated prior to McDonald's notice of claim are as follows: Smith's report and photographs, which have been produced; CAC's photographs, which have been produced; and QCCR, not produced as a privileged quality control document. Sentara submits with its memorandum a privilege log reciting the contents of the entire file. Sentara retained counsel in this matter in June 2003. (Sentara's Memo. p. 2.) Sentara has filed a motion to quash McDonald's subpoena duces tecum.

The decision to grant or deny discovery rests soundly in the discretion of the trial court. *Rakes v. Fulcher*, 210 Va. 542, 546, 172 S.E.2d 751, 755 (1970). The burden to show the work product doctrine applies to the present case rests on Sentara, the party asserting the privilege. Leigh B. Middleditch, Jr., and Kent Sinclair, *Virginia Civil Procedure*, § 12.4 (1992). The work product doctrine contained in Rule 4:1(b)(3) regulates discovery of certain items and reads, in relevant part, as follows:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(10) of this Rule and prepared in anticipation of litigation or for trial by or for another party ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Sup. Ct. R. 4:1(b)(3).

The work product doctrine can exclude from discovery "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs ... prepared by an adversary's counsel with an eye toward

litigation." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). *See Rakes v. Fulcher*, 210 Va. 542, 546, 172 S.E.2d 751, 755-56 (1970); *Commonwealth v. Edwards*, 235 Va. 499, 510, 370 S.E.2d 296, 302 (1988). The Supreme Court of Virginia has provided that the work product doctrine "protects an attorney from opening his files for inspection by an opposing attorney" and recognized the extension of this privilege to, for example, statements taken by third-persons for the use of trial counsel. *Rakes v. Fulcher*, 210 Va. 542, 546-47, 172 S.E.2d 751, 755-56 (1970). Whether investigative reports or files are discoverable or are protected work product has been the subject of disagreement among the Virginia circuit courts, and the Supreme Court of Virginia has not decided this issue.

Primarily, the circuit courts have dealt with this issue in the context of investigations done by insurers; whereas, the file being sought in the present case was compiled, not by an insurer, but by a private company hired by Sentara for purposes other than insurance. While some courts have chosen to draw a bright-line rule requiring some minimal involvement of counsel, others have chosen to base the decision instead on a variety of factors. *See, e.g., Thompson v. Winn Dixie Raleigh, Inc.*, 49 Va. Cir. 115, 115-16 (Chesterfield County 1999); *S.W. Heischman, Inc. v. Reliance Insurance Co.*, 30 Va. Cir. 235, 243-44 (Albemarle County 1993). The Fourth Circuit, interpreting Federal Rule of Civil Procedure 26(b)(3), which is reproduced by Rule of the Supreme Court of Virginia 4:1(b)(3), has explained that the Court must determine whether the documents in question were prepared in anticipation of litigation; of those which were prepared in anticipation of litigation, documents which contain legal opinion or theory are altogether excluded from discovery, while the remainder will be granted to the requesting party only upon a showing of substantial need. *National Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). In *National Union*, the Fourth Circuit also cites to *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D. D.C. 1982), for the proposition that "[t]he fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product."

The Court recognizes the danger of the outright exclusion of files of this nature from discovery based on the work product doctrine. As noted by the Rockingham Circuit Court, such a practice would make the exclusion too broad and effectively create an entire new category of material exempt from discovery. *Estabrook v. Conley*, 42 Va. Cir. 512, 513 (Rockingham County 1997). However, a rule that denies application of the work product doctrine where there is not some minimal involvement of counsel seems not to recognize the practical reality that, at some point before retention of counsel,

a defendant may be faced with an actual or potential claim, such that the defendant anticipates litigation and acts accordingly. Thus, it is well reasoned to approach the issue by evaluating why the requested documents were prepared to determine if the work product doctrine is relevant. *Prince v. Ponderosa Steakhouse*, 40 Va. Cir. 466, 470 (Albemarle County 1996); *Ring v. Mikris, Inc.*, 40 Va. Cir. 528, 532-33 (Newport News 1996).

Judge Robert P. Frank, while a circuit court judge, evaluating documents prepared by a claims service that was hired by the defendant's insurer, set forth the following three-pronged test for determining the application of the work product doctrine. The Court should determine, first, whether the document was prepared because of the prospect of litigation, second, whether defendant faced an actual or potential claim, and, third, whether the preparer could reasonably foresee the actual or potential claim would result in litigation. *Ring v. Mikris*, 40 Va. Cir. 528, 533 (Newport News 1996). Judge Franks goes on to suggest several factors the Court can consider, such as the severity of the plaintiff's injury, whether it is immediately apparent defendant's negligence caused the injury, receipt of notice of a claim, and retention of defense counsel. *Id.*, 40 Va. Cir. at 533-34.

In applying this test to the present case, it is important to note that the investigation in question was not done by Sentara's insurer. An investigation by an insurer lends itself to the categorization of 'in the ordinary course of business' because an insurer will regularly investigate claims to determine what action it will take. A routine investigation done by an insurer will generally not be protected by the work product doctrine. Instead, the file requested was prepared by a claims investigator separate from Sentara's insurer. However, the Court was not provided with facts regarding the frequency and regularity of investigations done by CAC. In addition, defense counsel was not retained until June 2003, a substantial time after the accident.

Nonetheless, the other factors present in the case lead to the conclusion that, once Sentara received notice of McDonald's claim for damages, the documents contained in CAC's file would be prepared in anticipation of litigation. The following factors are persuasive. McDonald suffered a very serious injury, necessitating surgery; she tripped on a structure that was clearly located on Sentara's premises; and the documents requested were prepared neither by an insurer nor by someone responsible for hospital safety. Furthermore, it has been submitted to the Court that referral to and investigation by CAC was not done in the case of every accident on Sentara's premises. Given these factors, once Sentara received notice that McDonald would be pursuing a claim for damages against the hospital, it is reasonable to conclude that documents contained in CAC's file were

prepared because of the prospect of litigation, that Sentara was facing an actual or potential claim, and that it was reasonably foreseeable that the actual or potential claim could result in litigation.

CAC should not have to produce those parts of its file that represent, for example, correspondence, strategy, and mental impressions of defense counsel. Furthermore, the work product doctrine should apply to those portions of CAC's file prepared subsequent to notice of McDonald's claim. As the work product doctrine does not provide an absolute protection from discovery, these documents need be produced only upon a showing of "substantial need" and inability "without undue hardship to obtain the substantial equivalent of the materials by other means." Sup. Ct. R. 4:1(b)(3). McDonald now has the burden of showing a substantial need for these documents, which are listed in Sentara's privilege log, sufficient to overcome the work product doctrine. The Court's present ruling should be read in conjunction with the Order entered by the Judge Charles D. Griffith, Jr., on January 5, 2004, in this matter.