# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **10th** *day of* **June, 2025**.

Robert Thornhill,                                                                                              Appellant,

 against             Record No. 0635-23-4
                         Circuit Court No. CL21001338-00

Commonwealth Eye Center, P.C., et al.,                                                     Appellees.

Upon a Petition for Rehearing En Banc

Before the Full Court

On May 27, 2025, the appellant, by counsel, filed a petition requesting that the Court set aside the judgment rendered on May 13, 2025, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

*original order signed by a deputy clerk of the*
By:    *Court of Appeals of Virginia at the direction*
           *of the Court*

Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Athey and Callins
Argued at Arlington, Virginia

ROBERT THORNHILL

v.      Record No. 0635-23-4

COMMONWEALTH EYE CENTER, P.C., ET AL.

MEMORANDUM OPINION[*] BY
CLIFFORD L. ATHEY, JR.
MAY 13, 2025

FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Dale B. Durrer, Judge

E. Kyle McNew (D. Cory Bilton; MichieHamlette PLLC, on briefs),
for appellant.

Paul T. Walkinshaw (Kathleen S. Ryland; Kristina L. Fattoum;
Byron J. Mitchell; Wharton Levin; Mitchell & Simopoulos, PLLC,
on brief), for appellees.


Robert Thornhill ("Thornhill") sued Commonwealth Eye Center, P.C. and Dr. D. Russell

Brear (collectively "Commonwealth Eye"), alleging that Commonwealth Eye committed medical

malpractice when it failed to meet the applicable standard of care when treating Thornhill's eye

condition.  Without objection, the Circuit Court of Culpeper County (the "circuit court")

subsequently entered a scheduling order requiring the parties to identify and file their list of

exhibits and witnesses with the circuit court on or before 15 days prior to trial.  Although

Thornhill timely mailed his proposed list of exhibits and witnesses to Commonwealth Eye, he

failed to timely file his proposed list of exhibits and witnesses with the circuit court.  Based upon

Thornhill's failure to comply with the scheduling order, Commonwealth Eye objected *in limine*

to Thornhill being permitted to call any witnesses on his behalf during his case in chief or to

---
[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

introduce any exhibits in evidence. Commonwealth Eye also moved for summary judgment conditioned upon successfully prevailing upon its objections to Thornhill's proposed witnesses and exhibits. Following a hearing on Commonwealth Eye's objections to all of Thornhill's proposed witnesses and exhibits, the circuit court held that Thornhill's failure to timely file the exhibit and witness list with the court was in violation of the scheduling order. The circuit court further held that the untimely filing did not fall within any of the exceptions to compliance enunciated in section V of the scheduling order. As a result, the circuit court barred Thornhill from presenting any evidence either through testimony or by the introduction of exhibits during his case in chief. The circuit court then proceeded to hear argument on Commonwealth Eye's motion for summary judgment. The circuit court concluded that since Thornhill was prohibited from introducing any evidence during his case in chief, summary judgment was appropriate and granted the motion for summary judgment ending the case. Thornhill appealed from the entry of summary judgment. Finding no abuse of discretion, we affirm the circuit court's grant of summary judgment.

## I. BACKGROUND

In October of 2021, Thornhill filed a medical malpractice suit against Commonwealth Eye, alleging that Dr. Brear breached the standard of care of an eye surgeon thereby directly and proximately causing injury to Thornhill's vision. Commonwealth Eye filed their answer in November of 2021, denying the allegations and simultaneously demurring to Thornhill's request for attorney fees. In December of 2021, the parties entered a consent order, stating that discovery conducted by the parties in a previously nonsuited case involving the same allegations "is adopted and incorporated into this action." Commonwealth Eye's demurrer as to attorney fees was also sustained without objection. In August of 2022, Commonwealth Eye filed a motion to compel discovery, alleging that Thornhill's discovery responses were more than 10

weeks overdue, and on September 27, 2022, the circuit court granted Commonwealth Eye's motion to compel discovery responses without objection.

On December 13, 2022, the parties jointly executed a scheduling order, which the circuit court entered at their request, and the case was set for a four-day jury trial commencing on March 20, 2023. The scheduling order, in section "V. Exhibit and Witness List," provided that all exhibits sought to be entered in evidence at trial were to be identified and filed with the court at the same time the proposed exhibits were sent to opposing counsel not later than 15 days before trial.[1] Section XII of the scheduling order, "Waiver or Modification of Terms of Order," further provided that "[u]pon motion, the time limits and prohibitions contained in this order may be waived or modified by leave of court for good cause shown."

On February 10, 2023, Commonwealth Eye filed a motion *in limine* requesting that the circuit court strike any request for "lost income" because Thornhill did not request lost income in his complaint. Commonwealth Eye also moved the court to sanction Thornhill for failing to provide full and complete discovery responses pursuant to the terms in the scheduling order. Following a hearing, by order dated March 10, 2023, the circuit court granted the motion *in limine*, holding that Thornhill would "not be permitted to introduce evidence regarding lost income at trial."

---

[1] The exact text of the relevant portion of the order states:

> Counsel of record shall exchange fifteen (15) days before trial a list specifically identifying each exhibit to be introduced at trial, copies of any exhibits not previously supplied in discovery, and a list of witnesses proposed to be introduced at trial. The lists of exhibits and witnesses shall be filed with the Clerk of the Court simultaneously therewith but the exhibits shall not then be filed. Any exhibit or witness not so identified and filed will not be received in evidence, except in rebuttal or for impeachment or unless the admission of such exhibit or testimony of the witness would cause no surprise or prejudice to the opposing party and the failure to list the exhibit or witness was through inadvertence.

Five days before the scheduled jury trial was set to commence on Monday, March 20, 2023, the circuit court emailed counsel for both parties advising them that while Commonwealth Eye had timely filed their exhibit and witness list with the circuit court on March 6, 2023, the court "did not see where [Thornhill] has filed any exhibit/witness list."[2]  Later that afternoon, Commonwealth Eye filed "Defendants' Objections to Plaintiff's List of Witnesses and Exhibits," objecting to the introduction of specific exhibits from Thornhill's list of exhibits.  After Commonwealth Eye filed this objection, Thornhill advised the circuit court by email that although he had timely mailed his exhibit and witness list to Commonwealth Eye on March 1, 2023, he had "inadvertently" failed to timely file the pleadings with the circuit court.  Thornhill also indicated that the original witness and exhibits lists would be shipped overnight to the circuit court.  At 3:15 p.m., Commonwealth Eye filed "Defendants' Objection to Plaintiff's Witness and Exhibit Lists and Motion for Summary Judgment," seeking to exclude any witnesses or exhibits Thornhill proposed in his case in chief because Thornhill had violated the scheduling order when failing to timely file with the circuit court his witness and exhibit lists while "provid[ing] no explanation to establish good cause for the Court to amend the Order and allow a late filing."

The following day at 4:51 a.m., Thornhill emailed the circuit court his brief in opposition to Commonwealth Eye's objection to the plaintiff's witness and exhibits list and motion for summary judgment.  Later that morning, the parties participated in a virtual hearing before the circuit court on Commonwealth Eye's objections to the exhibit and witness lists as well as their related motion for summary judgment.  At the hearing, Commonwealth Eye contended that Thornhill had failed to comply with the deadline for filing his exhibit and witness lists in the

---

[2] Thornhill confirmed that he had "no qualm with the court reviewing the file prior to trial, bringing the missing witness and exhibit lists to the parties' attention, and asking if anyone was going to make an issue about it."

scheduling order. They further argued that no exception to compliance with the scheduling order existed which would excuse Thornhill from compliance with the scheduling order. In support, Commonwealth Eye reasoned that "any time that one party faithfully complies with a scheduling order and the other party does not, but that party is allowed to proceed notwithstanding that violation, the party who does obey the order is prejudiced thereby." Commonwealth Eye also contended that the listed exceptions in section V of the scheduling order do not "address a failure to file the exhibit and witness lists," because section V only permits the court to consider "an omission," of certain witnesses and exhibits from a timely filed list and not a "failure to file" the exhibit and witness list in its entirety. Commonwealth Eye also asserted that Thornhill had neither requested leave to file a late witness and exhibit list nor had he shown good cause for why the pleadings were being filed late. Commonwealth Eye further argued that Thornhill had also failed to move to modify the filing deadlines as he was permitted to do in section XII of the scheduling order. Finally, Commonwealth Eye contended that Thornhill's failure to timely file a witness and exhibit list was "part of a pattern of the plaintiff in this case of violating the Rules of the Supreme Court of Virginia and the orders of this Court."

Thornhill responded that this was "an important issue for the Court to decide, so I'm not asking for the Court to delay making a decision." Thornhill argued that although the exhibit list had been sent previously to Commonwealth Eye, "there was an inadvertent failure to file the witness and exhibit list with the Court." Thornhill stated that he "strongly disagree[d]" that "somehow the rest of [section] V in the pretrial scheduling order concerning exhibit and witness lists somehow doesn't apply to the filing requirement." In response, Commonwealth Eye noted again that at no point during his argument did Thornhill ask the Court to modify or waive the filing deadlines or state good cause why that should be done as permitted in section XII of the

scheduling order. The hearing concluded at 10:30 a.m., and the matter was taken under advisement.

Finally, at 11:37 a.m., Thornhill filed his list of witnesses and exhibits with the circuit court, however the circuit court subsequently issued a letter opinion denying Thornhill the ability "to introduce any evidence or witnesses" later that afternoon. The letter opinion further granted Commonwealth Eye's motion for summary judgment and released the jury venire from attendance at the trial, which was set to begin the following Monday. In addition, the circuit court noted that "the court will be available for counsel, if they choose, to appear in the Culpeper County Circuit Court on Monday at 9:30 a.m. to proffer and place anything on the record."

On the following Monday, the circuit court announced that it had previously granted summary judgment for Commonwealth Eye but wanted "to let everybody put on the record whatever they would like to put on the record today before the court enters that order." Thornhill proffered that the case had previously been nonsuited and that discovery from that nonsuited case had been incorporated into the present case. He further noted that four witnesses that Commonwealth Eye had objected to were properly before the court as a result of the nonsuit.[3] Thornhill clarified that the emails exchanged between counsel and the circuit court would be made a part of the record, and then stated that he had "nothing further for the record." Thornhill appealed.

---

[3] The record is bereft of any exhibit list or witness list that had been previously filed with the trial court in the previously nonsuited case.

## II. ANALYSIS

A. *Thornhill's assignments of error pertaining to the circuit court's interpretation of the order are reviewed for an abuse of discretion.*

The parties disagree, in part, regarding the remaining standard of review applicable in this case to the circuit court's interpretation of the scheduling order. Thornhill argues that de novo review is appropriate because the scheduling order utilized in this case is the Uniform Pretrial Scheduling Order located in the Appendix of Forms of the Supreme Court of Virginia. Commonwealth Eye contends that an abuse of discretion standard is appropriate because the circuit court is simply interpreting its own order in this case. We agree with Commonwealth Eye.[4]

The circuit court "generally exercises 'broad discretion' in resolving such matters" as discovery issues and abuses, scheduling and docket control decisions, and decisions pertaining to the admissibility of evidence. *Am. Safety Cas. Ins. Co. v. C.G. Mitchell Constr.*, 268 Va. 340, 351 (2004) (quoting *Woodbury v. Courtney*, 239 Va. 651, 654 (1990)) (addressing discovery issues); *Rakes v. Fulcher*, 210 Va. 542, 546 (1970) (same); *Bennett v. Commonwealth*, 236 Va. 448, 461 (1988) ("No doubt continuances in the midst of trial should not be an everyday occurrence. Nevertheless, such decisions are entrusted to the sound discretion of the trial court."); *Bista v. Commonwealth*, 78 Va. App. 391, 412 (2023) (en banc) ("Appellate courts 'review a trial court's decision to admit or exclude evidence using an abuse of discretion standard'" (quoting *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021))). Consistent with this authority, our Supreme Court applies an abuse of discretion standard on appeal when reviewing a circuit court's interpretation

---

[4] Thornhill acknowledges that abuse of discretion review is proper "[t]o the extent that the court's decision here was driven by its consideration and balancing of different factors within the framework of the Scheduling Order." Thornhill also concedes that while the "debate" on the appropriate standard of review is "interesting, it ultimately should not be determinative."

of an entered scheduling order.[5]  *Galloway v. Cnty. of Northampton*, 299 Va. 558, 564 (2021) (interpreting scheduling order in the context of sanctions under Rule 4:12(b)(2)); *Mikhaylov v. Sales*, 291 Va. 349, 358-59 (2016) (interpreting "the Uniform Pretrial Scheduling Order," and appearing to apply an abuse of discretion standard by referring to the duty of deciding whether nondisclosed expert witness opinions should be excluded as "discretionary").  And this Court has reached the same conclusion as well.  *Reaves v. Tucker*, 67 Va. App. 719, 736 (2017) (applying abuse of discretion standard); *Rahnema v. Rahnema*, 47 Va. App. 645, 658 (2006) (applying abuse of discretion standard).  Therefore, upon reviewing the record and precedent before us here, we agree with Commonwealth Eye that the abuse of discretion standard applies here.

We apply the abuse of discretion standard of review here for three reasons.  First, our Court and the Supreme Court of Virginia, when interpreting similar language in scheduling orders, have consistently used an abuse of discretion standard when questions involving the circuit court judge's discretion are raised on appeal.  *See, e.g.*, *Galloway*, 299 Va. at 564; *Reaves*, 67 Va. App. at 736; *Rahnema*, 47 Va. App. at 658.[6]  Second, section XII of the scheduling order permits the circuit court, upon motion, to modify or waive provisions within the order.  Thus, the presence of section XII supports an inference that such orders are administered at the circuit court's discretion, justifying the application of appropriate appellate deference to the circuit

---

[5] Based upon the doctrine of stare decisis, we apply an abuse of discretion standard as a part of the ratio decidendi of these decisions.  *See, e.g.*, *Commonwealth v. Holland*, ___ Va. ___, ___ n.6 (Jan. 16, 2025) ("*Stare decisis* 'applies not merely to the literal holding of the case, but also to its *ratio decidendi*—the essential rationale in the case that determines the judgment.'  'In other words, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.'" (quoting *Womack v. Commonwealth*, 82 Va. App. 289, 303 (2024))).

[6] Recent unpublished cases have also applied the same standard of review.  *See Hunter v. Hunter*, No. 1237-22-1 (Va. Ct. App. Oct. 31, 2023); *Daniel v. Daniel*, No. 1189-19-4 (Va. Ct. App. Mar. 31, 2020); *Clements v. Med. Facilities of Am., Inc.*, No. 1060-23-3 (Va. Ct. App. Aug. 27, 2024); *Murphy v. Olive*, No. 0865-23-2 (Va. Ct. App. Aug. 20, 2024).

court's decision.[7] *Am. Safety Cas.*, 268 Va. at 351; *Rakes*, 210 Va. at 546; *Bennett*, 236 Va. at 461; *Bista*, 78 Va. App. at 412. And finally, the cases cited by Thornhill do not demand a contrary result. *See, e.g., Mikhaylov*, 291 Va. at 359; *Emerald Point, LLC v. Hawkins*, 294 Va. 544, 533-35 (2017) (explicitly applying abuse of discretion review). Therefore, we review the circuit court's interpretation of its own scheduling order for an abuse of discretion.

"An abuse of discretion occurs only when reasonable jurists could not differ as to the proper decision." *Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 764 (2014) (internal quotation marks omitted). The abuse of discretion standard therefore "necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013). We, however, review the circuit court's eventual grant of summary judgment de novo. *Ricketts v. Strange*, 293 Va. 101, 106 (2017).

B. *The circuit court did not abuse its discretion in holding that Thornhill's failure to file his list of exhibits and witnesses with the circuit court did not fall within the exceptions listed in the circuit court's scheduling order.*

Thornhill contends that the circuit court erred when it concluded that his late filings did not fall within the "safe harbor" provision of "the Uniform Pretrial Scheduling Order" because he had timely served Commonwealth Eye with his witness and exhibits list. We disagree.

"In any civil case the parties, by counsel of record, may agree and submit for approval and entry by the court a pretrial scheduling order." Rule 1:18(a). Where "a pretrial scheduling order has not otherwise been entered pursuant to the court's normal scheduling procedure, the court may, upon request of counsel of record for any party, or in its own discretion, enter the

---

[7] The scheduling order contains many similar provisions, including but not limited to language confirming that the "time limits and prohibitions contained in this order may be waived or modified by leave of court for good cause shown."

pretrial scheduling order contained in Section 3 of the Appendix of Forms at the end of Part I of these Rules (Uniform Pretrial Scheduling Order)."[8]  Rule 1:18(b).

We have previously noted that "[i]n order for Rule 1:18 scheduling orders to facilitate the orderly administration of cases, . . . they must be enforced by the trial courts." *Reaves*, 67 Va. App. at 732.  "Once the Court has entered a scheduling order, the liberal policy favoring amendments no longer applies . . . [and] any modification must be based on a showing of good cause." *Id.* (alterations in original).  "There is little point in issuing such orders if they amount to nothing more than a juristic bluff, obeyed faithfully by conscientious litigants, but ignored at will by those willing to run the risk of unpredictable enforcement." *Rahnema*, 47 Va. App. at 658. "The impartial, consistent enforcement of scheduling orders provides systemic benefits to litigants and trial courts alike." *Id.*

"[T]rial courts have the authority to interpret their own orders." *Davis v. Commonwealth*, 70 Va. App. 722, 732 (2019) (alteration in original).  "This Court 'defer[s] to the trial court's interpretation of its own order.'" *Id.* (alteration in original) (quoting *Leitao v. Commonwealth*, 39 Va. App. 435, 438 (2002)).  "That interpretation, however, must be reasonable." *Id.* (internal quotation marks omitted).  This reasonableness determination must come from a straightforward and plain reading of the order, *Roe v. Commonwealth*, 271 Va. 453 (2006), and the order must be considered "within its four corners," *Smoot v. Commonwealth*, 37 Va. App. 495, 500 (2002). "[T]he trial court's interpretive discretion 'must be exercised reasonably and not arbitrarily or

---

[8] Thornhill does not assert on brief that Rule 1:18(c) impacts our analysis, did not argue that Rule 1:18(c) applied before the trial court, and does not assign error to the circuit court for failing to apply it.  Thus, we do not address its application to the facts at bar, only in response to the dissent. *See, e.g.*, *Dudley v. Estate Life Ins. Co. of Am.*, 220 Va. 343, 348 (1979) ("Elementary is the rule of appellate procedure that the scope of the argument on appeal is limited by the assignments of error."); *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court.").

capriciously.'" *Roe*, 45 Va. App. at 245 (quoting *Smoot*, 37 Va. App. at 500).[9] This Court presumes that the circuit court applied the law correctly to the facts. *Bottoms v. Bottoms*, 249 Va. 410, 414 (1995).

Here, Thornhill contends that the circuit court erred when it failed to grant him a section V exception to the filing requirements contained within the Uniform Pretrial Scheduling Order entered in this case. He asserts that he should have been granted an exception because he timely sent his exhibit and witness lists to Commonwealth Eye. He further asserts that, as a result, Commonwealth Eye suffered no surprise or prejudice based upon the late filing of the pleadings in the circuit court.[10] Commonwealth Eye responds by acknowledging that although it was not surprised or prejudiced by the failure to file the pleadings in the circuit court, the failure to timely file the list of exhibits and witnesses in its entirety with the circuit court removes Thornhill's situation from the permitted exceptions in section V of the scheduling order. Commonwealth Eye further contends that section V of the scheduling order only applies to the omission of specific witnesses or exhibits from a timely filed list of all the proposed witnesses and exhibits. Thus, Commonwealth Eye contends that the circuit court did not abuse its discretion in denying the section V exception advocated by Thornhill based upon the court's finding that "failure to list" as enunciated in the scheduling order does not extend to the situation here where Thornhill "fail[ed] to file" the list of exhibits and witnesses with the circuit court. We agree with Commonwealth Eye.

---

[9] Our Supreme Court has emphasized the importance of neutrality and impartiality when interpreting and applying procedural rules, even under an abuse of discretion standard. *See Umana-Barrera v. Commonwealth*, No. 141122, slip op. at 15, 2015 Va. Unpub. LEXIS 15, at *19-20 (Aug. 21, 2015) (Kelsey, J., concurring in the result) (order) ("Truly neutral procedural rules allow courts to set limits and mark off boundaries without regard to which side stands to gain or lose.").

[10] The parties use the term "safe harbor" to refer to this exception.

The pertinent language from the scheduling order states that

> Counsel of record shall exchange fifteen (15) days before trial a list specifically identifying each exhibit to be introduced at trial, copies of any exhibits not previously supplied in discovery, and a list of witnesses proposed to be introduced at trial. The lists of exhibits and witnesses shall be filed with the Clerk of the Court simultaneously therewith but the exhibits shall not then be filed. Any exhibit or witness not so identified and filed will not be received in evidence, except in rebuttal or for impeachment or unless the admission of such exhibit or testimony of the witness would cause no surprise or prejudice to the opposing party and the *failure to list the exhibit or witness* was through inadvertence.

(Emphasis added). Here, the circuit court interpreted the permitted exception to the filing requirement to extend only to those items which were omitted from a timely filed exhibit and witness list. In doing so, the court determined that failing to *file* and failing to *list* were two distinct and different terms with two separate and distinct meanings. Hence, in support of barring Thornhill's witnesses and exhibits in his case in chief, the circuit court reasoned that it was "bound by the plain meaning of the order" and could not "add or subtract language from it." Thornhill fails to raise any evidence contrary to the circuit court's interpretation of its own order.

Here, the circuit court applied a common, straightforward, and well-recognized principle of interpretation in reaching its conclusion that Thornhill's inadvertent failure to file the required pleadings in the circuit court did not fall within any permitted exception in section V of the scheduling order. Thus, since an abuse of discretion can occur only when no reasonable jurist could have come to the same conclusion, we find that the circuit court did not abuse its discretion.

C. *The circuit court did not abuse its discretion in precluding Thornhill from introducing any exhibits or calling any witnesses during his case in chief because Thornhill failed to comply with the scheduling order.*

Thornhill next assigns error to the circuit court's decision to bar him from presenting evidence at trial as a result of his failure to comply with the scheduling order. Thornhill asserts that the circuit court's decision was not supported by the record. We disagree.

As recently affirmed by the Supreme Court of Virginia, "trial court[s] [have] *presumptive authority* to prohibit a party in material breach of an order regulating discovery from 'introducing designated matters in evidence.'" *Galloway*, 299 Va. at 564 (emphasis added) (quoting *Mikhaylov*, 291 Va. at 358-59). In *Galloway,* the Supreme Court was faced with a trial court's decision to bar an untimely disclosed expert from testifying at trial. *Id.* The appellants had "failed to provide the information [relating to the expert] required by Rule 4:1(b)(4)(A)(i), incorporated into the [uniform Pre Trial Scheduling Order (PTSO)], until two months later, [than the stated deadline]." *Id.* And "[t]he PTSO specifically warned that if a party failed to comply with the requirements of the PTSO, the party would 'ordinarily not be permitted' to use the undisclosed expert opinion at trial." *Id.* The appellants sought to excuse this failure, arguing that even though there was a delay in disclosing the expert, they should not be held to the terms of the PTSO because "it was not entered by the court until January 16, 2019, the same day they were required to disclose the identity of their experts and the substance of the experts' facts and opinions" and that "because they offered the defendants the opportunity to depose [the expert in question], they should not be penalized for neglecting to provide the details required by Rule 4:1(b)(4)(A)(i)." *Id.*

The Supreme Court of Virginia disagreed and affirmed the trial court, reasoning that "a party is not relieved from its disclosure obligation under [Rule 4:1(b)(4)(A)(i)] simply because the other party has some familiarity with the expert witness or the opportunity to depose the

expert." *Id.* at 565 (alteration in original) (quoting *John Crane, Inc. v. Jones*, 274 Va. 581, 592 (2007)). In addition, the Supreme Court further found that the

> trial court did not abuse its discretion by excluding [the expert in question] from testifying at trial . . . [as] "[t]o hold otherwise would reduce the expert disclosure obligation to the status of a mere recommendation or, worse, a juristic bluff—obeyed faithfully by conscientious litigants but ignored at will by those willing to run the risk of unpredictable enforcement."

*Id.* (quoting *Mikhaylov*, 291 Va. at 360).

Here, since Thornhill failed to timely file a list of exhibits or witnesses as required by the scheduling order, the circuit court did not abuse its discretion in barring the introduction of evidence on his behalf. The requirement to timely file a list of exhibits or witnesses on or before 15 days prior to trial was expressly addressed in the scheduling order. The scheduling order specifically provided that "[a]ny exhibit or witness not so identified and filed will not be received in evidence." Since the circuit court had not received any timely filed list of exhibits or witnesses as required by the scheduling order, the circuit court did not abuse its discretion when barring Thornhill from presenting any evidence.[11]

Thornhill's contention that because Commonwealth Eye was aware of the contents of the untimely filed lists and therefore not prejudiced is also misguided. Similar to *Galloway*, where the Supreme Court found it within the circuit court's discretion to bar the testimony of an untimely "identified and filed" expert, we find the circuit court was within its discretion to exclude the testimony of *all* of Thornhill's untimely filed experts and any related exhibits due to his failure to comply with the scheduling order as "[t]o hold otherwise would reduce the . . .

---

[11] Thornhill argues that disposing of cases without hearing the merits of the matter is disfavored in Virginia. Thornhill first raises this argument in his reply brief, so we therefore do not consider it. *Palmer v. Atlantic Coast Pipeline, LLC*, 293 Va. 573, 580 (2017) (holding that argument raised for the first time in reply brief was waived); *Jeter v. Commonwealth*, 44 Va. App. 733, 740-41 (2005) (holding that arguments cannot be developed for the first time in a reply brief or at oral argument).

obligation[s] [provided in such orders] to the status of a mere recommendation." *Galloway*, 299 Va. at 565 (quoting *Mikhaylov*, 291 Va. at 360). Hence, the circuit court did not abuse its discretion by barring Thornhill from calling his proposed experts to testify or by barring the introduction of his untimely filed exhibits.

D. *Since the circuit court did not abuse its discretion in excluding Thornhill's proposed exhibits and witnesses, the circuit court did not err in subsequently granting Commonwealth Eye's motion for summary judgment.*

Finally, Thornhill assigns error to the circuit court for granting Commonwealth Eye's subsequent motion for summary judgment and thereafter dismissing his complaint with prejudice, which Thornhill asserts was "simply uncalled for."[12] We disagree.

A trial court may appropriately grant summary judgment only in cases in which no material facts are genuinely in dispute. *See Thurmond v. Prince William Pro. Baseball Club, Inc.*, 265 Va. 59, 64 (2003). Moreover, "the decision to grant a motion for summary judgment is a drastic remedy." *Turner v. Lotts*, 244 Va. 554, 556 (1992). When used appropriately, part of the purpose of summary judgment is to "'bring litigation to an end at an early stage' thereby saving litigants from the costs of an unnecessary trial on a meritless claim." *AlBritton v. Commonwealth*, 299 Va. 392, 405 (2021) (quoting *Carson ex rel. Meredith v. LeBlanc*, 245 Va. 135, 140 (1993)).[13]

_____

[12] The circuit court found that Thornhill's failure to comply with the scheduling order barred him from calling any witnesses or presenting any evidence during his case in chief. As a result, we also find that the circuit court did not err by subsequently granting Commonwealth Eye's motion for summary judgment. Hence, we decline to reach Thornhill's assignment of error as to his initial objection which is subsumed within our affirmance of the grant of summary judgment. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (noting that judicial restraint requires cases to be resolved on the "best and narrowest grounds").

[13] Although Thornhill stated to the circuit court that Commonwealth Eye's motion should have been styled as a "motion to strike witnesses or exhibits" and that summary judgment should have been "another step," he does not assign error to this question on appeal and accordingly, we do not address it. *See* Rule 5A:18.

- 15 -

Here, Thornhill failed to comply with the scheduling order which required him to file a list of proposed exhibits and a list of proposed witnesses in the circuit court on or before 15 days before trial. As a result of his failure to timely file the pleadings, the circuit court ruled that any and all of Thornhill's evidence to be presented through his proposed witnesses and proposed exhibits was inadmissible during Thornhill's case in chief. Accordingly, since Thornhill was prohibited from presenting any evidence during his case in chief, there were no material facts in dispute sufficient to overcome Commonwealth Eye's denial of negligence. Thus, the circuit court did not err by granting Commonwealth Eye's motion for summary judgment.

Although Thornhill now laments the granting of summary judgment, he offers no countervailing theory of relief that the court could have considered, other than simply denying Commonwealth Eye's motion for summary judgment. For example, Thornhill failed to move for a continuance, failed to move the circuit court to amend the scheduling order, and failed to nonsuit his case.[14] He now contends on appeal that he was not required to offer the circuit court a viable alternative to granting the motion for summary judgment because the granting of Commonwealth Eye's motion for summary judgment was "simply uncalled for." Thornhill rationalizes his failure to employ his potential available remedies contained in section XII of the scheduling order by contending that "there was otherwise no reason" to "even consider a continuance" because a continuance "would not have addressed or alleviated any of the concerns raised by the defense or the court." We find his contention unavailing since the granting of a motion for continuance of only 15 days from the date of Thornhill's initial late filing could have cured his lack of compliance with the scheduling order. Additionally—and perhaps most significantly for purposes of this appeal—Thornhill contends that there was "no need" to invoke

___

[14] Although a voluntary nonsuit had previously been entered, Thornhill could have sought consent from the circuit court to enter a second nonsuit. *See* Code § 8.01-380.

the modification or waiver provisions of the scheduling order in section XII, because in his view there was already a "specific provision" that "addresses this scenario." Curiously, however, Thornhill fails to contend that he could not have sought relief based upon the plain meaning of section XII, which states in pertinent part that "[u]pon motion, the time limits and prohibitions contained in this order may be waived or modified by leave of court for good cause shown." *See Reaves*, 67 Va. App. at 134 (defining good cause simply as "the burden placed on a litigant (usually by court rule or order) to show why a request should be granted or an action excused"). Hence, Thornhill chose to forego invoking a provision in the scheduling order that recognizes the plenary power of the circuit court to modify or waive the very scheduling deadline affecting his ability to call witnesses and introduce evidence. Instead, he chose to rely upon a narrow provision which he now contends was the more appropriate relief. Moreover, the record reflects that Thornhill had multiple opportunities to attempt to avoid summary judgment by claiming good cause to invoke the remedies provided for in section XII of the scheduling order. Instead, Thornhill decided not to provide the circuit court with an alternative course of action even after the circuit court preemptively indicated how it might rule on his ill-fated interpretation of section V of the scheduling order. Thus, presented with no admissible evidence permitted as a result of Thornhill's noncompliance with the scheduling order as well as no attempt to continue the trial or modify the scheduling order, we cannot find that the circuit court abused its discretion and erred by granting Commonwealth Eye's motion for summary judgment.

### III. CONCLUSION

The circuit court did not abuse its discretion by interpreting its scheduling order to bar Thornhill from introducing any evidence during his case in chief given his failure to timely file with the court a list of exhibits or witnesses in a multi-day medical malpractice jury trial. Nor did the circuit court abuse its discretion by excluding Thornhill's witnesses and exhibits

identified and listed on his untimely filed list of exhibits and witnesses. In addition, the circuit court did not err in granting summary judgment when Thornhill failed to request the relief available to him in section XII of scheduling order, including his failure to move for a continuance of the trial, failure to move to amend or waive compliance with the scheduling order, or failure to move to nonsuit his case. Thus, we affirm the judgment of the circuit court.

*Affirmed.*

Callins, J., dissenting.

I agree with the effect of my esteemed colleagues' conclusion regarding summary judgment. Where the moving party fails to present evidence—witnesses and exhibits—to support his cause of action, summary judgment is warranted. If there is no cause, there is no case. And there can be no cause without evidence to support it. However, the sanction for partial noncompliance with a pretrial scheduling order is not to strike the moving party's case, and on that basis, dismiss the case on summary judgment. This is a "drastic remedy" not at all tailored to address the extent of the offense. Yet this is exactly what occurred here. And because I believe the trial court erred in imposing this drastic sanction, I respectfully dissent.

I. Standard of Review

As an initial matter, I take a different position from my colleagues regarding the applicable standard of review. The majority rightly identifies the scheduling order at issue here as the Uniform Pretrial Scheduling Order. This uniform order is found "in the Appendix of Forms at the end of Part I of [the Rules of the Supreme Court of Virginia]." Rule 1:18(b). Notably, Rule 1:18(b) provides that, in a civil case, a trial court "may, upon request of counsel . . . or in its own discretion, enter the [Uniform Pretrial Scheduling Order]." Indeed, Rule 1:18(b) suggests that entry of the Uniform Pretrial Scheduling Order is a matter of discretion, signified by the use of the word "may." *Bd. of Supervisors v. State Corp. Comm'n*, 292 Va. 444, 454 (2016) ("[I]n construing statutes this Court 'will apply the ordinary meaning of the word "may,"' which is 'permission, importing discretion' where, as here, no 'contrary legislative intention plainly appears." (quoting *Sauder v. Ferguson*, 289 Va. 449, 457 (2015))). Despite this grant of discretion, however, Rule 1:18(c) makes plain that

> [w]ith the exception of domestic relations and eminent domain cases, a court *may not* enter a scheduling order which deviates from the terms of the Uniform Pretrial Scheduling Order unless either (1) counsel of record for all parties agree to different

provisions, or (2) the court, after providing an opportunity for counsel of record to be heard, makes a finding that the [Uniform Pretrial Scheduling Order] is not consistent with the efficient and orderly administration of justice under the specific circumstances of that case.

(Emphasis added). If Rule 1:18(b)'s use of the word "may," on its own, signifies the grant of discretion, then Rule 1:18(c)'s use of the word "may" followed by the word "not" signifies the *absence* of discretion. Put differently, while Rule 1:18(b) permits the circuit courts to enter a scheduling order, Rule 1:18(c) explicitly requires the entry of the Uniform Pretrial Scheduling Order—if a scheduling order is to be entered—in all civil cases except those sounding in domestic relations and eminent domain and absent the invocation of certain enumerated exceptions.

Because, in many cases, the Uniform Pretrial Scheduling Order is entered in lieu of a court- or party-drafted scheduling order as a matter of heeding the Supreme Court of Virginia's mandate, I would conclude that its terms should be construed as an extension of the Rules. Thus, while my colleagues conclude that we must review the trial court's interpretation of the Uniform Pretrial Scheduling Order for an abuse of discretion, I would conclude that we must review the same de novo. *Compare Davis v. Commonwealth*, 70 Va. App. 722, 732 (2019) (noting that this Court "defer[s] to the trial court's interpretation of its own order," but that its "interpretation . . . must be reasonable, and [this Court] will 'apply an abuse of discretion standard'" (first quoting *Leitao v. Commonwealth*, 39 Va. App. 435, 438 (2002) (alteration in original); and then quoting *Bajgain v. Bajgain*, 64 Va. App. 439, 453 (2015) (second alteration in original)), *with LaCava v. Commonwealth*, 283 Va. 465, 469-70 (2012) ("A lower court's interpretation of the Rules of this Court, like its interpretation of a statute, presents a question of law that we review *de novo*.").

II.  De Novo

Assuming this Court should apply a de novo standard of review, I conclude that the trial court acted ultra vires by interpreting the provisions of the Uniform Pretrial Scheduling Order so as to permit the dismissal of Thornhill's case.

Code § 17.1-503(A) provides that the Supreme Court of Virginia "may formulate rules of practice and procedure for the circuit courts," with the limitation that such rules are "subject to the *strict* construction of the provisions of [Code] § 8.01-4."  (Emphasis added).  Meanwhile, Code § 8.01-4 provides that rules promulgated to govern the practice and procedure for circuit courts "shall be limited to those rules necessary to promote proper order and decorum and the efficient and safe use of courthouse facilities and clerks' offices" and that:

> No rule of any such court shall be prescribed or enforced which is
> inconsistent with this statute or any other statutory provision, or
> the Rules of [the] Supreme Court or contrary to the decided cases,
> or which has the effect of *abridging substantive rights* of persons
> before such court.  Any rule of court which violates the provisions
> of this section shall be invalid.

(Emphasis added).  There is nothing more that a court can do to abridge the substantive rights of a party than to dismiss their cause of action altogether.  *See Shiflet v. Eller*,[15] 228 Va. 115, 120 (1984) ("Substantive rights . . . are included within that part of the law dealing with creation of duties, rights, and obligations, as opposed to procedural or remedial law, which prescribes methods of obtaining redress or enforcement of rights.") (discussing "substantive" versus "procedural" rights in the context of the retroactive application of statutes).  By dismissing a party's case altogether, a circuit court inherently abridges that party's substantive rights by denying them even the opportunity to furnish proof in support of their cause of action.  To this

---

[15] "[O]ur precedent demonstrates that the type of duties, rights, and obligations *Shiflet* referred to are those that relate to causes of action, rights of recovery, contracts, real property interests, and the nature of what is criminal." *Montgomery v. Commonwealth*, 75 Va. App. 182, 206 (2022) (Lorish, J., dissenting).

end, Code § 8.01-4 explicitly provides that "[n]o civil matter shall be dismissed with prejudice by any . . . circuit court for failure to comply with any rule created under this section."

My colleagues in the majority rely on *Reaves v. Tucker*, 67 Va. App. 719 (2017), for the proposition that "[i]n order for Rule 1:18 scheduling orders to facilitate the orderly administration of cases, however, they must be enforced by the trial courts." *Id.* at 732. In that case, a litigant argued that a trial court erred by enforcing the Uniform Pretrial Scheduling Order by (1) denying her motion to extend pretrial deadlines, (2) denying a continuance request on the day of trial, and (3) barring the litigant from presenting any exhibits or witness that had not been identified at least 15 days before trial. *Id.* at 733-37. This Court found no error in the trial court's actions where the litigant was not denied the opportunity to participate in the adjudication of the matter despite being required to adhere to the terms of the scheduling order. *Id.*

In *Reaves* we stressed that "[i]n order for Rule 1:18 scheduling orders to facilitate the orderly administration of cases . . . they must be enforced by the trial courts." *Id.* at 732. Even so, we explicitly recognized that the Uniform Pretrial Scheduling Order is a "docket control procedure" subject to the limitations set forth by Code § 8.01-4. *Id.* Had the trial court in the present case merely enforced the Uniform Pretrial Scheduling Order's prohibition on the introduction of exhibits or witnesses not properly "identified and filed," while still permitting their introduction "in rebuttal or for impeachment," as did the court in *Reaves*, the trial court would not have erred. *See* Rule 1:18(b). Further, on de novo review, Rule 1:18(b)—the Uniform Pretrial Scheduling Order—explicitly provides that any such prohibition would be inapplicable in a case where an exhibit or witness was not properly listed through inadvertence. The facts of the present case clearly show that the exhibit and witness list was properly provided to opposing counsel; Thornhill's only failure was in *inadvertently* failing to file the same with the trial court. In any event, the trial court could not have permissibly enforced the provisions of the Uniform

Pretrial Scheduling Order by dismissing Thornhill's case. Indeed, in doing so, the trial court abridged Thornhill's substantive rights and denied him the opportunity to seek the vindication of his rights.

III. Abuse of Discretion

Even assuming, however, that the applicable standard of review is abuse of discretion, I conclude that the trial court erred.

My colleagues in the majority heavily rely on *Galloway v. County of Northampton*, 299 Va. 558 (2021), to support their conclusion that the "circuit court did not abuse its discretion by barring Thornhill from [introducing] his proposed experts [and evidence]." As they note, in *Galloway* our Supreme Court found no error where a trial court excluded an expert from testifying at trial where the party offering the expert failed to disclose information required by Rule 4:1(b)(4)(A)(i). *Galloway*, 299 Va. at 564-65. There, the Supreme Court reiterated that a trial court retains "presumptive authority to prohibit a party in a material breach of an order regulating discovery from 'introducing designated matters in evidence.'" *Id.* at 564 (quoting *Mikhaylov v. Sales*, 291 Va. 349, 358-59 (2016)). A material breach occurs when a party fails to do something "so fundamental" to the Uniform Pretrial Scheduling Order that "the failure to perform that obligation defeats an essential purpose" of the scheduling order. *Mathews v. PHH Mortg. Corp.*, 283 Va. 723, 732 (2012) (quoting *Countryside Orthopaedics, P.C. v. Peyton*, 261 Va. 142, 154 (2001)) (discussing the doctrine of first material breach in the context of contracts).

Here, Thornhill's failure to file the witness and exhibit list with the trial court—despite having provided the same to opposing counsel—cannot be said to have placed Thornhill in material breach of the Uniform Pretrial Scheduling Order. The plain language of the scheduling order makes clear that its essential purposes are to guard against unfair "surprise" or "prejudice" and that its terms should not be construed so as to punish the inadvertent failure to comply with a

technical requirement of its terms. Rule 1:18(b). By providing the witness and exhibit list to opposing counsel, Thornhill satisfied these essential purposes. Thus, the trial court did not dismiss his case altogether with the "presumptive authority to prohibit a party in a material breach of an order regulating discovery from 'introducing designated matters in evidence,'" as the rationale of my colleagues in the majority might suggest. *Galloway*, 299 Va. at 564.

Absent any authority by statute or under the Rules, only under its contempt powers could the trial court have stricken Thornhill's evidence as a matter of enforcing the Uniform Pretrial Scheduling Order. "A court may find a party in contempt for 'disobedience or resistance . . . to any lawful process, judgment, decree or order of the court." *Epperly v. Cnty. of Montgomery*, 46 Va. App. 546, 552 (2005) (alteration in original) (quoting Code § 18.2-456(5)). "On appeal, '[a]n adjudication of contempt will be reversed "only if we find that the court abused its discretion."'" *Id.* at 552-53 (alteration in original) (quoting *Estate of Hackler v. Hackler*, 44 Va. App. 51, 64-65 (2004)). Sanctions for contempt for "misconduct tangentially related to the underlying suit" must be "narrowly tailored to correct" the contemptuous conduct at issue. *Winters v. Winters*, 73 Va. App. 581, 593 (2021). "As a standard . . . 'the imposition of a particular sanction must be sufficient to deter [the offending] practices,' and the imposition of the sanction requires the exercise of judicial discretion." *Id.* (second alteration in original). Thus, in *Winters*, this Court held that where a father in a custody proceeding violated a court order prohibiting him from disclosing the contents of a court-ordered psychological evaluation to the minor children's stepmother, dismissal of his custody suit was nonetheless an inappropriate sanction and an abuse of discretion. *Id.* at 590-94.

Our Court's decision in *Ange v. York/Poquoson Department of Social Services.*, 37 Va. App. 615 (2002), is a useful comparator. In that case, the mother of four children in a termination of parental rights case engaged in a series of behaviors in defiance of the trial court's

Uniform Pretrial Scheduling Order. *Ange*, 37 Va. App. at 618-22. To wit, the mother acted in contempt of the scheduling order by failing to file certain "best interest" proffers with the trial court after the trial court, sua sponte, extended the deadline multiple times; even when the mother did file the proffers, they were only "partially completed." *Id.* at 618-20. She further only "partially completed" a home study required by the scheduling order and failed to respond to communications sent by the Department of Social Services in pursuit of reunification efforts. *Id.* at 620-21. The mother likewise did not appear at a number of scheduled meetings with the Department. *Id.* at 621. Upon notification from the Department of the foregoing, the trial court found that the mother "had 'not substantially complied with any of' its pretrial orders concerning the preparation of the case for trial." *Id.* The trial court "sanction[ed] [the mother] for her noncompliance by summarily resolving the four cases involving [the mother's] children without benefit of a hearing on the merits." *Id.*

On appeal, we reversed the judgment of the trial court in so sanctioning the mother. *Id.* at 632. We observed that "[l]ess drastic sanctions would have served the same purpose of punishing [the mother] for her noncompliance, without short-circuiting these significant legal proceedings." *Id.* Even in sanctioning a party in contempt of a court order, we emphasized that "[s]uch drastic measures that summarily terminate the legal process are generally not favored and are to be avoided when possible." *Id.* at 629. Based on the "nature of th[e] case, the severity of the sanction imposed, [the mother's] partial compliance with the trial court's orders, and the need to protect [the mother's] rights," we found that the "trial court clearly abused its discretion." *Id.* at 632.

Here, Thornhill more than partially complied with the trial court's orders—his only failure with regard to the witness and exhibit list took the form of his failure to file the list with the trial court itself. Otherwise, Thornhill provided all notice due under the Uniform Pretrial

Scheduling Order to the party for whom it mattered most, his opposing counsel. Thornhill's noncompliance was markedly less significant than that of the mother in *Ange*, where the mother failed to comply with virtually any of the requirements contained in the scheduling order. By resorting to the drastic sanction of striking Thornhill's entire case and granting summary judgment against him, the trial court's actions were well out of proportion with the conduct it sought to police. Put differently, the trial court's actions were not "narrowly tailored to correct the problem presented." *Winters*, 73 Va. App. at 593.

"We must be mindful . . . that, although we 'accord deference to the decision of the trial court,' we 'should not simply rubber stamp every discretionary decision of a trial court.'"[16] *Ange*, 37 Va. App. at 624 (quoting *Walsh v. Bennett*, 260 Va. 171, 175 (2000)). "[I]n assessing the propriety of the imposition of a particular sanction, we may also take into account the context in which the sanction was imposed and any policy considerations that might be pertinent to the imposition of that sanction.'" *Id.* at 625. In this case, my colleagues in the majority may unintentionally give license to trial judges to impose sanctions on individuals who fail to comply with the minutiae of a Uniform Pretrial Scheduling Order in magnitudes well out of proportion to the conduct at issue. I decline to rubber stamp such conduct at the expense of depriving litigants of their day in court.

Therefore, I respectfully dissent.

---

[16] As members of the judiciary, we are tasked with an imperative to act impartially, and to avoid placing a finger on the scales of justice in favor of one party over another. By inviting Commonwealth Eye Center to file a motion to strike and for summary judgment—a course of action that had not been contemplated by Commonwealth Eye Center—the trial judge in this matter did exactly that. This is conduct which should not be condoned as a matter of discretion.